STATE OF NORTH CAROLINA v. ANDREW JERMAINE JORDAN

No. COA07-69

(Filed 6 November 2007)

### 1. Burglary and Unlawful Breaking or Entering— first-degree burglary—motion to dismiss—sufficiency of evidence—felonious intent

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree burglary even though defendant contends the State's evidence tended to show intent to murder but not to commit felonious assault as alleged in the indictment because there was substantial evidence for a reasonable mind to conclude that, at a minimum, defendant unlawfully entered the victim's home with the intent to commit felonious assault even if this same evidence would also support an intent to murder theory.

### 2. Burglary and Unlawful Breaking or Entering— first-degree burglary—instruction—intent to feloniously assault

The trial court did not commit plain error in a first-degree burglary case by its instruction to the jury on an intent to feloniously assault theory even though defendant contends the evi-

dence was only sufficient to demonstrate intent to murder, because the State presented sufficient evidence to support a finding of intent to feloniously assault.

3. **Burglary and Unlawful Breaking or Entering— first-degree burglary—instruction—failure to instruct on lesser-included offense of felonious breaking and entering— nighttime**

The trial court did not err in a first-degree burglary case by denying defendant's motion to instruct the jury on the lesser-included offense of felonious breaking and entering, because: (1) there was no conflict as to the time period in which the unlawful entry occurred; (2) the evidence showed that the breaking happened shortly before 6:49 p.m., and given the court took judicial notice that 5:21 p.m. marked the end of civil twilight that day, the State's uncontroverted evidence was sufficient to fully satisfy its burden of proving that the breaking and entering occurred at some point during the nighttime; and (3) defendant's denial alone was insufficient to negate the nighttime element.

4. **Kidnapping— second-degree—instruction—plain error— evidence inconsistent with theory upon which jury was instructed**

The trial court committed plain error in a second-degree kidnapping case by instructing the jury that defendant could be found guilty of kidnapping only if defendant restrained the victims for the purpose of committing first-degree burglary, and defendant is entitled to a new trial because: (1) the evidence showed that the burglary occurred before, not after, the kidnapping; and (2) the evidence is inconsistent with the theory upon which the jury was instructed.

5. **Kidnapping— second-degree—instruction—plain error analysis—restrained—confined**

The trial court did not commit plain error in a second-degree kidnapping case by its use of the term "restrained" while the indictment alleged "confined," because given the strength of the evidence against defendant, there was no reasonable basis to conclude that use of the word "confine" would have altered the jury's verdict. Since this type of error is likely to reoccur, the Court of Appeals noted that the terms "restrain" and "confine" are not synonymous. Instead, it concluded that evidence showing that the victims were held at gunpoint in the kitchen

was sufficient to find that the victims were both "restrained" and "confined."

**6. Criminal Law— prosecutor's argument—reasons to believe State's evidence instead of vouching for credibility of witness**

The trial court did not err in a first-degree burglary and second-degree kidnapping case by failing to intervene ex mero motu to strike portions of the State's closing argument that a sheriff who testified for the State was an honest man and that he was not trying to convict somebody for something they didn't do because: (1) while counsel may not personally vouch for the credibility of the State's witnesses or for his own credibility, counsel may give the jurors reasons why they should believe the State's evidence; and (2) the prosecutor's argument is properly characterized as one giving the jurors reasons why they should believe the State's evidence, as opposed to one personally vouching for the sheriff's credibility.

Appeal by defendant from judgments entered 25 July 2006 by Judge J. Richard Parker in Perquimans County Superior Court. Heard in the Court of Appeals on 19 September 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Dahr Joseph Tanoury, for the State.*

*Appellate Defender Staple Hughes, by Assistant Appellate Defender Charlesena Elliott Walker, for defendant appellant.*

McCULLOUGH, Judge.

Defendant Andrew Jermaine Jordan ("defendant") was tried before a jury at the 24 July 2006 Criminal Session of Perquimans County Superior Court after being charged with one count of first-degree burglary, one count of second-degree kidnapping, and one count of first-degree attempted armed robbery. The State's evidence tended to show the following: On 12 December 2003, Kathy Turner, Kelly Palmer, and Dana Hayes were visiting with each other at Dana Hayes's residence, located at 388 Chinquapin Road. Kathy Turner had recently finished watching her grandchild at her daughter's house, which is across the street from Hayes's residence, and it was turning dark at the time her daughter came home from work.

**STATE v. JORDAN**

[186 N.C. App. 576 (2007)]

Turner, Palmer, and Hayes had been sitting at the kitchen table with an infant in a carrier on the floor between them when Rashie Bellfield, Christopher Hinton, Quinton Porter, and defendant suddenly kicked open a locked door and entered the house.[1] The men were wearing hoods and ski masks. Chris Hinton and Quinton Porter were carrying guns.

The men ordered the group, at gunpoint, to get down on the ground in the kitchen. At one point, one of the men held a gun to the infant's head, threatening to kill the child if the group did not cooperate.

While Turner, Palmer, and Hayes were held in the kitchen, one man went down the hall toward the back of the house. Bellfield testified at trial that the men had entered the house intending to "kill someone" in particular, but quickly discovered that they were in the wrong house. After this realization, the men fled to their car. Palmer immediately called 911, and Turner headed to her daughter's house across the street. Turner testified that she was too upset to notice the lighting conditions when she left the Hayes's residence. Turner's son-in-law, who was in his yard across the street, saw the men's vehicle leaving.

At 6:49 p.m., Officer Larry Chamblee of the Perquimans County Sheriff's Department received a call, reporting the incident and describing the perpetrators' vehicle. The police subsequently spotted the vehicle, and a high speed chase ensued. The perpetrators' car lost control and crashed into a wooded area. Three of the men ran from the car, but defendant remained seated in the backseat.

At the police station, in the presence of Perquimans County Sheriff Tilley and Probation Officer Long, defendant voluntarily prepared an unsigned, written statement, corroborating the events described above and confirming that defendant did enter Hayes's residence.

At the close of the State's evidence, the defense moved for a directed verdict on all three charges. The trial court granted the motion with respect to the charge of first-degree attempted armed robbery, but denied the motions regarding first-degree burglary and second-degree kidnapping.

---

1. The State presented conflicting evidence as to whether defendant was one of the men who entered the residence. At trial, Kathy Turner testified that four men entered Dana Hayes's residence, but in a statement to Officer Chamblee, Turner only reported three men. Rashie Bellfield testified that defendant never entered the residence.

Defendant's evidence tended to show the following: On 12 December 2003, Christopher Hinton agreed to drive defendant to Chowan Hospital so that he could visit with his sister and sick nephew. Bellfield and Porter were also in the car. Defendant had just met Hinton, but was well acquainted with Bellfield, who had a child with defendant's sister, and Porter, whom he had known since childhood. During the car ride, there was no conversation about robbing a house or about killing anyone. Defendant did not see any ski masks or guns in the car. After stopping for gas, Hinton told defendant that they needed to stop by Hinton's house. They arrived at a house with which defendant was unfamiliar, and Hinton, Bellfield, and Porter got out of the car and opened the trunk, stating that they would be back shortly. Defendant remained in the car.

Soon after, at around 6:00 p.m., Hinton, Bellfield, and Porter came running back to the car. Defendant asked what had happened, but the men did not answer. Next, the car was spotted by the police, a high-speed chase ensued, and the car crashed into a ditch. Defendant testified that the reason he chose not to run from the police was because he knew he had done nothing wrong. Defendant testified that the police had fabricated the written statement admitted into evidence by the State.

Defendant was found guilty of first-degree burglary and second-degree kidnapping. He received consecutive terms of imprisonment of 87 to 124 months.

On appeal, defendant argues that the trial court erred by: (1) denying defendant's motion to dismiss the first-degree burglary charge; (2) improperly instructing the jury with respect to both the first-degree burglary charge and the second-degree kidnapping charge; and (3) failing to strike portions of the State's closing argument.

I. Motion to Dismiss

[1] Defendant first contends that the trial court erred in denying his motion to dismiss the first-degree burglary charge.

In ruling on a motion to dismiss, the trial judge must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). The court must find that there is substantial evidence of each element of the crime charged and of the defendant's perpetration of such crime. *Id.* "Substantial evidence is

relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.*

The elements of first-degree burglary are: (1) the breaking, (2) and entering, (3) in the nighttime, (4) into a dwelling house or sleeping apartment of another, (5) which is actually occupied at the time of the offense, (6) with the intent to commit a felony therein. *State v. Barnett*, 113 N.C. App. 69, 74, 437 S.E.2d 711, 714 (1993). The actual commission of the intended felony is not an essential element of the crime. *State v. Bell*, 285 N.C. 746, 208 S.E.2d 506 (1974).

In the case at hand, the indictment alleged, *inter alia*, that, at the time of the breaking and entering, defendant intended to commit felonious assault. Defendant contends that while the State's evidence tended to show intent to murder, it did not show intent to feloniously assault, as alleged in the indictment, and was thus insufficient to satisfy the felonious intent element of the first-degree burglary charge. We disagree.

Under North Carolina General Statutes, a person is guilty of felonious assault where he (1) commits an assault on another, (2) with a deadly weapon, (3) with intent to kill. N.C. Gen. Stat. § 14-32(c) (2005). Common law assault is " 'an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force . . . must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.' " *State v. Roberts*, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967) (citation omitted).

Viewed in the light most favorable to the State, the evidence tended to show that defendant and three conspirators kicked down the front door of Dana Hayes's house, wearing ski masks and carrying loaded guns. While inside the house, the men terrorized and assaulted its occupants, pointing guns at them and threatening to "blow [their] heads off." Bellfield specifically testified that the men entered the home intending to kill at least one person and that they only abandoned their plan upon discovering that they had entered the wrong house. We agree with the State that there was substantial evidence for a reasonable mind to conclude that, at a minimum, defendant unlawfully entered Dana Hayes's home with the intent to commit felonious assault, though this same evidence would also support an intent to murder theory. Therefore, the trial court properly denied defendant's motion to dismiss the first-degree burglary charge.

## II. Jury Instructions

Defendant makes several assignments of error to the jury instructions.

### A. First-degree Burglary Charge

**[2]** Defendant first contends that the trial judge erred in instructing the jury on an intent to feloniously assault theory, where the evidence was only sufficient to demonstrate intent to murder. For the reasons previously discussed, we disagree.

Defendant did not object to this instruction at trial, and therefore, asks this Court for plain error review. "Under a plain error analysis, defendant is entitled to a new trial only if the error was so fundamental that, absent the error, the jury probably would have reached a different result." *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002).

"The trial court's jury instructions on possible theories of conviction must be supported by the evidence." *State v. Osborne*, 149 N.C. App. 235, 238, 562 S.E.2d 528, 531, *aff'd*, 356 N.C. 424, 571 S.E.2d 584 (2002). As previously discussed, the State presented sufficient evidence to support a finding of intent to feloniously assault. Therefore, there was no error in instructing the jury on that theory.

**[3]** Next, defendant contends that, because there was conflicting evidence as to whether defendant entered Hayes's residence during the nighttime, the trial court committed reversible error in denying defendant's motion to instruct the jury on the lesser included offense of felonious breaking and entering. Because we find no conflict as to the time period in which the unlawful entry occurred, we disagree.

" '[N]ecessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor.' " *State v. Collins*, 334 N.C. 54, 58, 431 S.E.2d 188, 191 (1993) (emphasis in original) (quoting *State v. Hicks*, 241 N.C. 156, 159, 84 S.E.2d 545, 547 (1954)). Where the State's evidence is sufficient to fully satisfy its burden of proving each element of the greater offense and defendant's denial that he committed the offense is the only evidence to negate those elements, the defendant is not entitled to an instruction on the lesser offense. *State v. Smith*,

351 N.C. 251, 267-68, 524 S.E.2d 28, 40, *cert. denied*, 531 U.S. 862, 148 L. Ed. 2d 100 (2000).

" 'The law considers it to be nighttime when it is so dark that a man's face cannot be identified except by artificial light or moonlight.' " *State v. Garrison*, 294 N.C. 270, 279, 240 S.E.2d 377, 383 (1978) (quoting *State v. Frank*, 284 N.C. 137, 145, 200 S.E.2d 169, 175 (1973)). As our Supreme Court did in *Garrison*, we take judicial notice that in Chowan County on 12 December 2003, the sun set at 4:52 p.m., and the end of civil twilight occurred at 5:21 p.m. See the schedule for "Sunrise and Sunset" computed by the Nautical Almanac Office, United States Naval Observatory. *See also* N.C. Gen. Stat. § 8C-1, Rule 201(f) (providing that a court may take judicial notice at any stage of a proceeding).

The uncontroverted evidence in the record shows that Turner's daughter had already come home from work at the health department by the time the unlawful entry occurred; the perpetrators were only in Hayes's residence for a brief time before discovering their mistake and fleeing the scene; the victims contacted the police immediately after the perpetrators left the residence; and Officer Chamblee received a phone call reporting the incident at 6:49 p.m. Thus, the evidence clearly shows that the breaking happened shortly before 6:49 p.m. Given that 5:21 p.m. marked the end of civil twilight, we find the State's uncontroverted evidence sufficient to fully satisfy its burden of proving that the breaking and entering occurred well after 5:21 p.m., at some point during the nighttime.

While Turner testified that she was too upset to notice the lighting conditions after the breaking and entering occurred, she testified that it was turning dark before she went over to Hayes's house. Turner's testimony is wholly consistent with the time line established by Officer Chamblee's phone records and does not tend to establish that it was daytime when the unlawful entry occurred. The only evidence tending to support a finding that the unlawful entry occurred in the daytime is defendant's testimony that the men returned to their car at about 6:00 p.m, when it was "just turning dark." Defendant's denial alone, however, is insufficient to negate the nighttime element. There is no other evidence in the record from which a juror could rationally find that the incident occurred prior to 5:21 p.m., which marked the end of civil twilight. Therefore, we find no error in the trial judge's decision not to instruct on the lesser included offense of felonious breaking and entering.

B. Kidnapping Charge

**[4]** Defendant next assigns plain error to the trial court's instruction that, in order to find defendant guilty of second-degree kidnapping, the jury must find that defendant "unlawfully restrained a person . . . for the purpose of facilitating the Defendant's commission of first degree burglary[.]" Defendant contends that the evidence did not support the giving of this instruction. We agree.

Under North Carolina General Statutes, to be guilty of kidnapping, a defendant must "unlawfully confine, restrain, or remove from one place to another, any person 16 years of age or over without the consent of such person" for one of four specified purposes, including "[f]acilitating the commission of any felony[.]" N.C. Gen. Stat. § 14-39(a)(2) (2005). Where the victim is released to a safe place and is not seriously injured or sexually assaulted, the defendant is guilty of second-degree kidnapping. N.C. Gen. Stat. § 14-39(b).

It is well settled that an indictment under N.C. Gen. Stat. § 14-39(a)(2) need not allege the exact type of felony furthered by the restraint or confinement, and any additional language such as "rape or robbery" in the indictment is harmless surplusage, which may properly be disregarded. *State v. Moore*, 284 N.C. 485, 493, 202 S.E.2d 169, 174 (1974). However, it is plain error to allow a jury to convict a defendant upon a theory not supported by the evidence. *See State v. Tucker*, 317 N.C. 532, 539-40, 346 S.E.2d 417, 422 (1986); *State v. Brooks*, 138 N.C. App. 185, 190-92, 530 S.E.2d 849, 852-53 (2000). This Court has recognized that the felony that is the alleged purpose of the kidnapping must occur after the kidnapping. *Id.* at 192, 530 S.E.2d at 854; *State v. Brodie*, 171 N.C. App. 363, 615 S.E.2d 97, *disc. review denied*, 360 N.C. 67, 621 S.E.2d 881 (2005).

In this case, the trial court instructed the jury that defendant could be found guilty of kidnapping only if defendant restrained the victims for the purpose of committing first-degree burglary. The court did not instruct as to any other possible purpose. Defendant argues that the evidence shows that, if any burglary occurred, it was completed before the restraint, and therefore, the jury instruction was unsupported by the evidence. We agree.

"The elements of first-degree burglary are: (i) the breaking (ii) and entering (iii) in the nighttime (iv) into the dwelling house or sleeping apartment (v) of another (vi) which is actually occupied at the time of the offense (vii) with the intent to commit a felony therein." *State v. Singletary*, 344 N.C. 95, 101, 472 S.E.2d 895, 899

(1996). In this case, the burglary was complete as soon as defendant kicked down the front door and entered Hayes's residence with the intent to murder; whereas, the kidnapping was not complete until the defendant and his accomplices unlawfully restrained the victims by ordering them at gunpoint to lie on the ground. Thus, the evidence shows that the felony that is the only alleged purpose for the kidnapping occurred before, not after, the kidnapping; the evidence is, thus, inconsistent with the theory upon which the jury was instructed.

The State contends that evidence of defendant's walking down the hall toward the back of the house supports an inference that defendant was searching for property to steal and that the burglary was, thus, on-going in nature, occurring after the victims had been restrained. Given that the State conceded at trial that any evidence of intent to steal was insufficient to support the attempted armed robbery charge and, accordingly, the trial judge granted a directed verdict with respect to that charge, we find this argument unpersuasive.

We cannot uphold a jury verdict based upon a theory that is not supported by the evidence. The instruction as to the kidnapping charge constitutes plain error, and defendant must receive a new trial with respect to this charge. *Tucker*, 317 N.C. 532, 540, 346 S.E.2d 417, 422.

[5] Although the kidnapping conviction cannot stand, we note that defendant also assigns plain error to the jury instruction's use of the term "restrained," while the indictment alleged "confined." Given the strength of the evidence against defendant, we find no reasonable basis to conclude that use of the word "confine" would have altered the jury's verdict, and this instructional error would not have constituted plain error. However, because this type of error is likely to reoccur, we note that the terms "restrain" and "confine" are not synonymous. Instead, we conclude that evidence showing that the victims were held at gunpoint in the kitchen was sufficient to find that the victims were both "restrained" and "confined." *See State v. Gainey*, 355 N.C. 73, 95, 558 S.E.2d 463, 478, *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165 (2002), (recognizing that " 'the term "confine" connotes some form of imprisonment within a given area, such as a room, a house or a vehicle. The term "restrain," while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement.' ") *Id.* (citation omitted). Nonetheless, the kidnapping conviction cannot stand due to plain error in the trial court's instruction on the felonious purpose element.

### III. Closing Argument

**[6]** Finally, defendant contends that the prosecutor improperly vouched for the credibility of the State's witness during closing argument. The pertinent portion of the prosecutor's argument relates to the credibility of Sheriff Tilley's testimony concerning defendant's unsigned, written statement. The prosecutor argued, "[W]e contend that the Sheriff is an honest man and he has told you what happened. He's not trying to convict somebody for something they didn't do. He wouldn't want to do that. He is the elected Sheriff of this county." Because defendant did not object to the closing argument at trial, we review to determine whether the remarks were so grossly improper that the trial court committed reversible error in failing to intervene *ex mero motu. State v. Trull*, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999). "To establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *State v. Davis*, 349 N.C. 1, 23, 506 S.E.2d 455, 467 (1998), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999). In determining whether an argument is grossly improper, we must examine the context in which it was given and the circumstances to which it refers. *See State v. Cummings*, 353 N.C. 281, 297, 543 S.E.2d 849, 859, *cert. denied*, 534 U.S. 965, 151 L. Ed. 2d 286 (2001). Under this standard, we find that the prosecuting attorney's argument did not require the court to intervene *ex mero motu.*

"It is well settled that the arguments of counsel are left largely to the control and discretion of the trial judge and that counsel will be granted wide latitude in the argument of hotly contested cases." *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986). To that end, counsel are permitted to argue the evidence presented and all inferences reasonably drawn therefrom. *Id.* "Even so, counsel may not, by argument . . ., place before the jury incompetent and prejudicial matters by injecting his own knowledge, beliefs, and personal opinions not supported by the evidence." *State v. Britt*, 288 N.C. 699, 711, 220 S.E.2d 283, 291 (1975).

Our Supreme Court has recognized that while counsel may not personally vouch for the credibility of the State's witnesses or for his own credibility, counsel may give the jurors reasons why they should believe the State's evidence. *State v. Bunning*, 338 N.C. 483, 489, 450 S.E.2d 462, 464 (1994) (concluding that a prosecutor's argument that a law enforcement officer would not risk his professional reputation merely to convict the defendant was proper); *State v. Rogers*, 355

N.C. 420, 453, 562 S.E.2d 859, 880 (2002), *cert. denied,* 360 N.C. 294, 629 S.E.2d 283 (2006) (finding no impropriety in prosecutor's argument that the State's witness had no "axe to grind" or reason to lie).

Likewise, we conclude that the prosecutor's argument is properly characterized as one giving the jurors reasons why they should believe the State's evidence, as opposed to one personally vouching for the sheriff's credibility. As such, the argument did not require the court to intervene *ex mero motu.*

Based on the foregoing, we find no error in defendant's conviction of first-degree burglary. We reverse the trial court's judgment regarding defendant's conviction of second-degree kidnapping.

Reversed in part, no error in part.

Judges CALABRIA and STEPHENS concur.