STATE v. POWELL

[223 N.C. App. 77 (2012)]

---

STATE OF NORTH CAROLINA v. KEVIN ANDREW POWELL

No. COA12-317

(Filed 2 October 2012)

**1. Sentencing—prior record level—oral stipulation—prior record level worksheet—sufficient to support points and resulting prior record level**

The trial court did not err in a murder case by sentencing defendant as a prior record level II offender. Defense counsel's oral stipulation to the existence of a prior out-of-state felony conviction, combined with the State's submission of a prior record

level worksheet, were sufficient to adequately support the trial court's decision about how many total points to award defendant and what his resulting prior record level was.

## 2. Evidence—objection to witness as expert—no objection to admission of testimony on grounds of accuracy—benefit of prior objection lost

The trial court did not err in a murder case by allowing a law enforcement officer to testify as an expert in Jamaican patois. While defendant objected to the witness being tendered as an expert witness initially, defendant never objected on grounds of accuracy to admission of the transcripts containing the witness's translations such that the content of the witness's expert translations ultimately came in without objection. Thus, the benefit of defendant's objection was lost.

## 3. Homicide—murder—sufficient evidence—elements of crime—defendant as perpetrator

The trial court erred in a murder case by denying defendant's motion to dismiss for insufficiency of the evidence. There was sufficient evidence of all elements of the crime charged including that defendant was the perpetrator.

## 4. Evidence—witness credibility—not vouched for by prosecutor—testimony why jury should believe witness

The trial court did not commit plain error in a murder case by allowing the prosecutor to vouch for the credibility of one of the State's witnesses. The prosecutor did not vouch for the witness's credibility but merely elicited testimony suggesting reasons why the jury should believe the testimony.

Appeal by Defendant from judgment entered 29 August 2011 by Judge Timothy S. Kincaid in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 September 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General R. Marcus Lodge, for the State.*

*Jones McVay Law Firm PLLC, by Dianne Jones McVay, and Chiege O. Kalu Okwara, for Defendant.*

STEPHENS, Judge.

STATE v. POWELL

[223 N.C. App. 77 (2012)]

*Procedural History and Evidence*

Following his indictment on one charge of murder, Defendant Kevin Andrew Powell pled not guilty to the charge and was tried before a jury in Mecklenburg County Superior Court. The evidence presented at trial tended to show the following: On 10 March 2007, Latarshia Grant, the girlfriend of the victim, Jamarr Linell Flowers, dropped Flowers off at his home around 9:00 p.m. Grant returned to Flowers's home between 10:30 and 11:00 p.m. and noticed that "the wood off the door was gone." When she pushed through the door, Grant saw Flowers lying dead on the floor. Grant immediately called 911.

When law enforcement officers arrived, they observed that Flowers had been shot six times at close range. Law enforcement officers also found a mobile phone on the floor next to Flowers that did not belong to him. Through their investigation of the murder, law enforcement officers determined that the phone belonged to Defendant's employer and that the employer had given the phone to Defendant. Law enforcement officers later determined that Defendant received a call from his girlfriend at 10:40 p.m. and that the call was transmitted to Defendant's phone by a cell phone tower located less than one mile from Flowers's home.

Thereafter, Defendant was interviewed by law enforcement officers and admitted that the phone was his, but denied that he had been at the crime scene. After his interview, Defendant was arrested. At trial, State's witness Etoyi Blount testified that, while sharing a jail cell with Defendant and several other men following Defendant's arrest, Blount heard one of the men ask Defendant how police had "caught" Defendant for Flowers's murder:

> And [Defendant] had told him that – [Defendant] told him that the police had found his phone, or either he wouldn't be in jail if the police hadn't found his phone. And then the guy asked [Defendant], Well, how did the police get your phone? And [Defendant] said, I must have dropped it after I killed him.

Following the presentation of evidence, the trial court instructed the jury on both first- and second-degree murder. Thereafter, the jury returned a verdict of guilty of second-degree murder, and the trial court sentenced Defendant, as a Level II offender, to 189–236 months imprisonment. Defendant appeals.

*Discussion*

On appeal, Defendant makes four arguments: that the trial court erred in (1) sentencing him as a Record Level II offender; (2) allowing a law enforcement officer to testify as an expert in Jamaican patois; (3) denying his motion to dismiss for insufficiency of the evidence; and (4) allowing the prosecutor to vouch for the credibility of a State's witness. As discussed herein, we find no error.

*I. Prior Record Level*

[1] Defendant first argues that the trial court erred in sentencing him as a prior Record Level II offender where the State failed to produce sufficient evidence of his criminal history. Specifically, Defendant argues that his trial counsel's oral stipulation to the existence of a prior out-of-state felony conviction, combined with the State's submission of a prior record level worksheet, were not sufficient because neither Defendant nor his counsel had signed the worksheet. We disagree.

Although the relevant statute is clear and specific about the process for determining how a defendant's prior record level is calculated for sentencing purposes, conflation of the steps involved and imprecise language in some of our case law has led to occasional confusion on this issue. For this reason, we think it useful to provide a brief overview of the process before addressing Defendant's specific argument.

For purposes of sentencing, a trial court must (1) ascertain the type and number of the defendant's prior convictions, (2) calculate the sum of the points assigned for each conviction, and (3) based upon the defendant's total points, determine the defendant's prior record level. N.C. Gen. Stat. § 15A-1340.14 (2011). The existence of a prior conviction under the first step of this process requires a factual finding. *See* N.C. Gen. Stat. § 15A-1340.14(a) ("The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of *the offender's prior convictions that the court . . . finds to have been proved* in accordance with this section.") (emphasis added). Accordingly, the existence of a prior conviction may be established by, *inter alia*, "[s]tipulation of the parties." N.C. Gen. Stat. § 15A-1340.14(f)(1). Specifically, "[a] sentencing worksheet coupled with statements by counsel may constitute a stipulation to the existence of the prior convictions listed therein." *State v. Hinton*, 196 N.C. App. 750, 751, 675 S.E.2d 672, 673 (2011).

The trial court next determines the points assigned for each prior conviction, as provided in subsection b. N.C. Gen. Stat. § 15A-1340.14(b). Subsection b specifies the points to be assigned based on the class of felony or misdemeanor underlying each prior conviction. *Id.* For example, a single Class I felony conviction results in an assignment of two points. N.C. Gen. Stat. § 15A-1340.14(b)(4). For a prior conviction from other jurisdictions, the default classification is "as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony[.]" N.C. Gen. Stat. § 15A-1340.14(e) (also noting that the State or a defendant *may* attempt to show by a preponderance of the evidence that an out-of-state conviction is substantially similar to a different class of offense in this State).

While "the question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of law to be resolved by the trial court[,]" *State v. Hanton,* 175 N.C. App. 250, 255, 623 S.E.2d 600, 604 (2006), whether a prior out-of-state conviction exists and whether it is a felony are questions of fact. *See State v. Bohler,* 198 N.C. App. 631, 636-37, 681 S.E.2d 801, 805-06 (2009), *disc. review denied,* ___ N.C. ___, 691 S.E.2d 414 (2010). Accordingly,

> while the trial court may not accept a stipulation to the effect that a particular out-of-state conviction is "substantially similar" to a particular North Carolina felony or misdemeanor, it may accept a stipulation that the defendant in question has been convicted of a particular out-of-state offense and that this offense is either a felony or a misdemeanor under the law of that jurisdiction.

*Id.* at 637-38, 681 S.E.2d at 806.

Under the third step of the process provided in section 15A-1340.14, the trial court uses its calculation from step two to assign the defendant a prior record level. N.C. Gen. Stat. § 15A-1340.14(a). For example, if the defendant has from one to four points, he shall be determined to have a prior record level of II. *See* N.C. Gen. Stat. § 15A-1340.14(c). This determination is a question of law. *State v. Wingate,* ___ N.C. App. ___, ___, 713 S.E.2d 188, 189 (2011). "Stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *Id.* (citation and quotation marks omitted)

Accordingly, we review the ultimate determination of a defendant's prior record level *de novo. Id.* at ___, 713 S.E.2d at 190. "As a

result, the issue before the Court [on appeal] is simply whether the competent evidence in the record adequately supports the trial court's decision [about how many total points to award a defendant and what his resulting prior record level is]." *Bohler*, 198 N.C. App. at 633, 681 S.E.2d at 804.

Here, the record reveals the following colloquy at sentencing:

> [The State]: Your Honor, the State would contend that the defendant is a prior record level [II]. He has a felony drug conviction from New York that he was convicted [of] on March 8th of 2004. If I may approach with the worksheet.
>
> The Court: Very well. [Defense counsel], does the defendant stipulate to a record level [II] *based on that conviction?*
>
> [Defense counsel]: Yes, we will, Your Honor.

(Emphasis added). The prior record level worksheet introduced during sentencing shows Defendant had one prior felony conviction from New York, which pursuant to the statutory default provision was labeled a Class I felony and assigned two points, resulting in a suggested prior record level of II.

On appeal, Defendant does not dispute the existence of his prior felony conviction in New York. Rather, he contends that his counsel's oral stipulation was ineffective because, since neither Defendant nor his counsel had signed the worksheet, "it is unknown from the record what defense counsel was stipulating to." We are not persuaded and conclude that, taken in context, the court's question, "does [D]efendant stipulate to a record level [II] based on that conviction[,]" can only be fairly read as asking whether Defendant stipulated to the existence of the out-of-state felony conviction, as well as to his ultimate prior record level resulting therefrom.[1] *Cf. State v. Powell*, 254 N.C. 231, 234, 118 S.E.2d 617, 619 (1961) ("While a stipulation need not follow any particular form, its terms must be definite and certain

---

1. Despite voluminous case law from this Court and from our Supreme Court and the plain language of section 15A-1340.14(a) that the ultimate determination of a defendant's prior record level is a question of law based upon questions of law and fact, to wit, the existence and type of a defendant's prior convictions and the calculation of points based thereupon, in *State v. Alexander*, 359 N.C. 824, 616 S.E.2d 914 (2005), our Supreme Court found that the "defendant stipulated to his prior record level pursuant to [N.C. Gen. Stat.] § 15A-1340.14(f)(1)[.]" *Id.* at 828, 616 S.E.2d at 917. We need not revisit this issue here, as even were Defendant's stipulation to his prior record level ineffective as being to a question of law, his stipulation to the existence of a prior out-of-state felony would remain and would suffice to support the court's prior record level determination.

in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them.") (quotation marks and citations omitted), *superseded on other grounds by statute*, N.C. Gen. Stat. § 20-179(a) (2009) (as recognized in *State v. Denning*, 316 N.C. 523, 525-26, 342 S.E.2d 855, 857 (1986)). Defendant cites no authority for the proposition that a defendant's explicit oral stipulation to the existence of an out-of-state felony conviction is ineffective if he has not signed the prior record level worksheet, and we know of none.

Because the worksheet and Defendant's stipulation constituted "competent evidence in the record adequately support[ing] the trial court's decision [about how many total points to award a defendant and what his resulting prior record level is,]" *Bohler*, 198 N.C. App. at 633, 681 S.E.2d at 804, we overrule Defendant's argument.

## II. *Testimony Interpreting "Patois"*

**[2]** Defendant next argues that the trial court erred in allowing a law enforcement officer to testify as an expert in Jamaican patois. We disagree.

This Court reviews a trial court's determination of whether a lay witness may testify to an opinion for abuse of discretion. *State v. Ziglar*, ___ N.C. App. ___, ___, 705 S.E.2d 417, 419, *disc. review denied*, 365 N.C. 200, 710 S.E.2d 30 (2011). We also review a trial court's determination whether to allow expert testimony for abuse of discretion. *State v. Brockett*, 185 N.C. App. 18, 28, 647 S.E.2d 628, 636, *disc. review denied*, 361 N.C. 697, 654 S.E.2d 483 (2007). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *Id.* at 21-22, 647 S.E.2d at 632 (citation and quotation marks omitted).

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion[.]" N.C. Gen. Stat. § 8C-1, Rule 702(a) (2011).

Expert testimony is properly admissible when it can assist the jury in drawing certain inferences from facts and the expert is better qualified than the jury to draw such inferences. While a trial court should avoid unduly influencing the jury's ability to draw its own inferences, expert testimony is proper in most facets of human knowledge or experience.

*Brockett*, 185 N.C. App. at 28, 647 S.E.2d at 636 (citations and quotation marks omitted).

Because we find it instructive and factually on point, we believe a more detailed examination of the facts of *Brockett* is warranted here. In *Brockett*, a police detective was permitted to "interpret[]" recorded conversations between the defendant and his brother which included numerous gang-related slang terms. *Id.* at 29, 647 S.E.2d at 636. The defendant objected, noting there was no "clearly defined dictionary of street gang lingo, and I think that if some of these words are open to interpretation, then the wrong interpretation would be extremely damaging [to the defendant.]" *Id.* at 28-29, 647 S.E.2d at 636. The trial court stated that it would not let the State qualify the detective as an expert, but overruled the defendant's objection and permitted the detective to testify to his interpretations. *Id.*

On appeal, this Court rejected the defendant's argument that the trial court had erred in allowing the detective to offer opinion testimony:

> Although [the trial court] ruled that [it] would not allow the prosecutor to qualify [the detective] as an expert before the jury, [the court]'s statement that [the detective] has "training and skills that will aid the jury in interpreting this stuff[,]" and the fact that [the court] allowed [the detective] to offer opinion testimony, demonstrate that [the court] concluded that [the detective] was qualified to offer expert opinions on the meaning of slang terms. [The court]'s statement that [it] would not allow the prosecutor to "qualify [the detective] as an expert" indicates only that, to avoid any improper judicial influence on the weight to be given [the detective]'s testimony, [the court] did not want the jury to hear that [the detective] was testifying as an expert.

*Id.* at 30, 647 S.E.2d at 637 (citing *State v. Wise*, 326 N.C. 421, 431, 390 S.E.2d 142, 148, *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 113 (1990)). In *Wise*, our Supreme Court held that where a

> defendant interposed only general objections to the testimony which is the subject of [the appeal and] never requested a specific finding by the trial court as to the witness' qualifications as an expert . . . a finding that the witness is qualified as an expert is implicit in the trial court's ruling admitting the opinion testimony.

*Id.*

Here, at trial, Officer Christopher Wilson of the Charlotte-Mecklenburg County Police Department provided "translations" of phone calls Defendant made from the county jail after his arrest. During these calls, Defendant and other parties spoke in Jamaican patois. According to Wilson, patois is a form of "broken English" not taught in Jamaican schools but rather just "pick[ed] up as you go."[2]

The State did not explicitly offer Wilson as an expert witness. However, near the start of Wilson's testimony, defense counsel stated, "I'd object if this witness is going to be tendered as an expert witness[,]" an objection which the trial court "[o]verruled at this point." During Wilson's testimony, the State sought to introduce several transcripts of calls as State's exhibits 44—46. Defense counsel stated, "And, Your Honor, I do have a content objection on Number 44 before that's introduced into evidence." The court responded, "All right. Let's go ahead and proceed." After eliciting testimony from Wilson describing the transcripts as pages with two columns, the left being the actual content of the phone calls in patois and the right being Wilson's "translation" thereof into standard English, the State moved to introduce them. Defense counsel stated, "I would note my objection partially to 44, Your Honor." Copies of exhibits 44-46 were then published to the jury, and a recording of the phone call in State's exhibit 45 was played for the jury.

Our review of this portion of the transcript reveals that, while Defendant objected to any tender of Wilson as an expert witness in patois, Defendant did *not* object to admission of State's exhibits 45 or 46 (the transcripts containing Wilson's translations) at all, and made only a partial "content objection" to the remaining transcript.

During Wilson's brief testimony about the first recording played for the jury, Defendant made several general objections, none mentioning the accuracy of the transcripts and all of which the court overruled. Defense counsel then cross-examined Wilson about his knowledge of Jamaican patois. The State asked additional questions on this point on re-direct. Wilson testified that he was born in Jamaica, lived there for 22 years, was married to a Jamaican woman, and spoke Jamaican patois every day at home with his wife and in regular phone calls to his parents.

---

2. "Patois" is defined, *inter alia*, as "a dialect other than the standard or literary dialect" and "illiterate or provincial speech[.]" Webster's Third New International Dictionary 1655 (2002).

The day after Wilson began his testimony, defense counsel informed the court:

> I met with my client after we closed yesterday, and he felt that the translations weren't accurate on these transcripts. And, so, that's why I objected to having someone who is not a certified translator basically act as a certified translator. My client told me that he thought especially a lot of the pronouns in the translations were done incorrectly. I called the interpreter from the public defender's office this morning, and he referred me to the person who handles it for the courts. I think there's a good chance we can get someone to look at this stuff over the weekend. But my client was adamant that he thinks there's major mistakes in some of these transcripts.

This comment cannot fairly be viewed as an objection, either to Wilson's testimony or to the transcripts previously admitted. Rather, it appears that the defense was considering whether to call its own expert in patois. The trial court responded:

> That matter is up for counsel to . . . attack the . . . witness's training or qualification or skills. The fact that anybody deems it to be inaccurate does not affect its admissibility, only its credibility. The witness can still testify. His testimony is admissible. Now, whether or not it's believable or not because of that is a matter for counsel to address either through cross-examination or other witnesses. But it doesn't affect its admissibility.

On re-cross, defense counsel asked Wilson additional questions about his use of patois, and Wilson again confirmed that he spoke the dialect every day with his wife and family.

In sum, the record reveals that: (1) as in *Brockett*, Defendant "never requested a specific finding by the trial court as to [Wilson's] qualifications as an expert[,]" and (2) accordingly, "a finding that [Wilson was] qualified as an expert is implicit in the trial court's ruling admitting [Wilson's] opinion testimony[.]" *Brockett*, 185 N.C. App. at 30, 647 S.E.2d at 637 (citation and quotation marks omitted). However, (3) while Defendant objected to Wilson being tendered as an expert witness initially, (4) he never objected on grounds of accuracy to admission of the transcripts containing Wilson's translations, such that (5) the content of Wilson's expert translations ultimately came in without objection. It is well-established that, "[w]here evidence is admitted over objection and the same evidence has been pre-

viously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995). Accordingly, this argument is overruled.

### III. Motion to Dismiss

**[3]** Defendant also argues that the trial court erred in denying his motion to dismiss for insufficiency of the evidence. Specifically, Defendant contends that there was insufficient evidence that Defendant was the perpetrator of the murder. We disagree.

> This Court reviews the denial of a motion to dismiss for insufficient evidence *de novo*. In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. The trial court must also resolve any contradictions in the evidence in the State's favor. The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility.
>
> In order for evidence to sustain a conviction it must be substantial. Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion.

*State v. Trogdon*, ___ N.C. App. ___, ___, 715 S.E.2d 635, 641-42 (2011) (citations and quotation marks omitted). "What constitutes substantial evidence is a question of law for the court. What the evidence proves or fails to prove is a question of fact for the jury." *State v. Miller*, 289 N.C. 1, 4, 220 S.E.2d 572, 574 (1975).

Here, the uncontradicted evidence established that Defendant's cell phone was found next to the victim, cell phone records showed that Defendant's cell phone was located within one mile of the murder scene at the approximate time of the murder, Defendant gave inconsistent statements about his whereabouts at the time of the murder, and a witness testified that after his arrest Defendant stated, "I must have dropped [my phone] after I killed him." Taken in the light most favorable to the State, giving the State the benefit of all reasonable inferences, and leaving for the jury any questions of witness credibility, this evidence was "adequate to convince a reasonable mind to accept a conclusion" that Defendant killed Flowers and thereafter dropped his cell phone at the scene. *See Trogdon*, ___ N.C. App. at ___, 715 S.E.2d at 642. Whether the evidence *proved* Defendant was the perpetrator was a question for the jury. *Miller*, 289 N.C. at 4, 220 S.E.2d at 574. Accordingly, the trial court did not err in

denying Defendant's motion to dismiss for insufficiency of the evidence. This argument is overruled.

## IV. Statements of the Prosecutor

[4] Finally, Defendant argues that the trial court committed plain error in allowing the prosecutor to vouch for the credibility of State's witness Blount. We disagree.

Because Defendant did not object to the testimony in question at trial, we review only for plain error. Our Supreme Court has recently reaffirmed that

> the plain error standard of review applies on appeal to unpreserved instructional or evidentiary error. For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice ___ that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence*, ___ N.C. ___, ___, 723 S.E.2d 326, 334 (2012) (citations, quotation marks, and brackets omitted). "Our Supreme Court has recognized that while counsel may not personally vouch for the credibility of the State's witnesses or for his own credibility, counsel may give the jurors reasons why they should believe the State's evidence." *State v. Jordan*, 186 N.C. App. 576, 586, 651 S.E.2d 917, 923 (2007), *disc. review denied*, 362 N.C. 241, 660 S.E.2d 492 (2008). In *Jordan*, this Court held that the following statement by a prosecutor did not constitute vouching for a witness's credibility: "[W]e contend that the Sheriff is an honest man and he has told you what happened. He's not trying to convict somebody for something they didn't do. He wouldn't want to do that. He is the elected Sheriff of this county." *Id.*

Here, after establishing that, at the time of his testimony, Blount was serving a federal prison sentence in Georgia on a drug charge, the prosecutor and Blount engaged in the following exchange:

Q[.] Prior to you speaking to the detective or the Assistant DA, were any promises made to you?

A[.] No, they weren't.

Q[.]  Were any statements made to you that this is what will happen in your case if you tell us what you heard about Kevin Powell?

A[.]  No.

Q[.]  And from 2007 to 2011, has anything been done regarding your sentence as it relates to this case?

A[.]  No.

Q[.]  Now, you've said you've been at Mecklenburg County Jail for about three weeks. About three weeks ago, did you and I meet at the police station?

A[.]  Yeah.

Q[.]  Was a detective inside that room with us?

A[.]  Yes, there was.

Q[.]  And when we met, did I make any promises to you as to what would happen regarding your case?

A[.]  You told me that you couldn't make any promises.

Q[.]  I told you that I couldn't make any promises?

A[.]  Yes.

Q[.]  And was that because I work in state court and—well, do you recall that conversation was about I work in state court; I have no influence or no control over what happens in the federal court?

A[.]  Yeah.

Our review of this colloquy reveals that the prosecutor did not vouch for Blount's credibility, but merely elicited testimony suggesting reasons why the jury should believe Blount's testimony, to wit, that Blount was not receiving any leniency or favorable treatment in exchange for his testimony against Defendant. We find the exchange quite routine in this regard and certainly far less explicit than a statement that a witness was "an honest man" who "wouldn't want to do that [lie on the stand]." *See Jordan*, 186 N.C. App. at 586, 651 S.E.2d at 923. Accordingly, Defendant has failed to show any error by the

trial court in allowing this testimony, let alone plain error. This argument is overruled.

NO ERROR.

Judges CALABRIA and ELMORE concur.