STATE OF NORTH CAROLINA v. RONNIE LEE ZIGLAR

No. COA10-839

(Filed 1 February 2011)

**1. Evidence— hypothetical—lay witness—foundation for opinion absent**

The trial did not abuse its discretion in a prosecution for felony death by vehicle by precluding defendant from testifying about whether he would have been able to stop his car had the brakes worked properly. The question was a hypothetical, but there was no foundational evidence of defendant's perception of his ability to stop the car under the hypothetical circumstances.

**2. Appeal and Error— sentencing within presumptive range— no appeal as of right**

A defendant convicted of felony death by vehicle was not entitled to appeal as a matter of right whether his sentence was supported by evidence introduced at trial where the sentence was within the presumptive range. Defendant did not petition for a writ of *certiorari*.

Appeal by Defendant from judgment and sentence dated 3 June 2009 by Judge John O. Craig, III in Rockingham County Superior Court. Heard in the Court of Appeals 15 December 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Tammera S. Hill, for the State.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by John Keating Wiles, for Defendant.*

STEPHENS, Judge.

*Factual and Procedural Background*

On 4 August 2008, Defendant Ronnie Lee Ziglar ("Ziglar") was indicted on one count of felony death by vehicle pursuant to N.C. Gen. Stat. § 20-141.4(a1). On 9 March 2009, the State notified Ziglar that it intended to prove the existence of two aggravating factors, specifically: (1) that Ziglar "knowingly created a great risk of death to more than one person by means of a weapon or device which would

normally be hazardous to the lives of more than one person[,]" and (2) that Ziglar used a deadly weapon at the time of the crime.

Ziglar was tried before a jury at the 1 June 2009 Criminal Session of Rockingham County Superior Court, the Honorable John O. Craig, III presiding.[1] The evidence presented by the State at trial tended to show that on 19 May 2008, beginning around 3:30 p.m., Ziglar and Chris Hamby ("Hamby"), the victim in this case, were at Hamby's home drinking "hard liquor" and "working on the cabinets[.]" Around 5:00 p.m., Hamby and Ziglar left Hamby's home in Hamby's Camaro and drove "towards town[;]" Ziglar was driving and Hamby was riding in the passenger seat. Hamby's wife observed the Camaro drive away from Hamby's home at a "ridiculous" speed.

As Hamby and Ziglar drove along Lawsonville Avenue near Reidsville, North Carolina, three children observed the Camaro drive past them at a high rate of speed. When the Camaro went around a curve, the children lost sight of the Camaro, but moments later they heard a crash.

Around 5:30 p.m., emergency personnel arrived at the scene of the crash and found the Camaro on fire, Ziglar bleeding but conscious, and Hamby "laying [sic] on his back . . . the upper half of his body in the backseat area . . . bleeding around the ears and the nose . . . . He did not have a pulse and was not breathing." At trial, Dr. Mark Jordan, a pathologist who conducted a postmortem examination of Hamby, testified that the cause of Hamby's death was "[b]lunt force trauma to the head due to motor vehicle accident."

Shortly after the accident, Ziglar was taken to the hospital, where he had his wounds treated and blood drawn. Reidsville Police Department Officer William Gibson ("Officer Gibson") questioned Ziglar at the hospital and, based on his suspicion that Ziglar was driving the Camaro at the time of the accident, and based on his opinion that Ziglar was "appreciably impaired mentally and physically with a substance that [he] associat[ed] with alcohol[,]" Officer Gibson charged Ziglar with driving while impaired.

Analyses of Ziglar's blood that evening revealed that at 6:14 p.m., Ziglar's blood alcohol concentration was 0.267, and at 9:42 p.m., Ziglar's blood alcohol concentration was 0.17; both of these measurements put Ziglar over the legal limit for alcohol impairment while driving. See N.C. Gen. Stat. § 20-138.1 (2007) ("A person commits the

---

1. The trial was bifurcated, with the penalty phase following the guilt phase.

offense of impaired driving if he drives any vehicle upon any highway . . . [a]fter having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more . . . .").

At trial, Sergeant John Pulliam ("Sergeant Pulliam") of the Reidsville Police Department, an expert in motor vehicle accident reconstruction, estimated that the car was traveling at "75 miles per hour at the initial place where the tire impressions were found" and also testified that at the accident site, he did not see anything on the road to indicate that the brakes had been applied.

Following the close of the State's evidence, Ziglar took the stand and testified that he was driving roughly 60 miles per hour and that when he "got in the curve" just before the accident, he attempted to apply the brakes, but nothing happened. Ziglar testified that he looked down at the brake pedal and "[when] I looked back up[,] we were off the road, and that's when we hit the tree."

Following the close of all evidence, the trial court instructed the jury on felony death by vehicle and the jury found Ziglar guilty.

In the trial's penalty phase, the State presented the testimony of Sergeant Pulliam, who testified that Lawsonville Avenue was a residential street with "medium to medium-high" traffic conditions. Sergeant Pulliam also testified that Ziglar was the only other person injured. The trial court then instructed the jury on the following aggravating factor:

Do you find from the evidence beyond a reasonable doubt the existence of the following aggravating factor? And that is, [Ziglar] knowingly created a great risk of death to more than one person by means of a device which would normally be hazardous to the lives of more than one person.

The jury returned a verdict finding the existence of the aggravating factor. The trial court found as a mitigating factor that the victim was more than 16 years of age and was a voluntary participant in Ziglar's conduct. The court determined that the aggravating and mitigating factors "essentially cancel each other out" and sentenced Ziglar to a term of 34 to 50 months imprisonment, which is at the upper end of the presumptive range of sentencing for the charged offense. Defendant gave notice of appeal of the judgment and sentence in open court.

STATE v. ZIGLAR

[209 N.C. App. 461 (2011)]

## Discussion

[1] On appeal, Ziglar first argues that the trial court erred by precluding Ziglar from testifying as to whether he would have been able to stop the car had the brakes worked properly. During the direct examination of Ziglar, defense counsel asked, "And had there been brakes that worked on the car, would you have been able to stop the car in your opinion?" Before Ziglar answered, the State objected to the question and the trial court sustained the objection, reasoning "that's a little bit too speculative."

Ziglar concedes that he was not testifying as an expert on this subject such that the admissibility of his lay opinion testimony is governed by North Carolina Rule of Evidence 701. Rule 701 provides that where a witness is not testifying as an expert, his testimony in the form of opinions is limited to those opinions which are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2009). A trial court's determination of whether a lay witness may testify as to an opinion is reviewed for abuse of discretion. *State v. Washington*, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000), *disc. review denied*, 353 N.C. 396, 547 S.E.2d 427 (2001).

In deciding this issue, we note that the question was targeted to a hypothetical situation, *viz.*, under similar circumstances, but in the event that the brakes were working properly, would Ziglar be able to stop the car? Because a lay opinion must be rationally based on the perception of the witness, for Ziglar's opinion to be admissible, some foundational evidence was required to show that Ziglar had, at some point, perceived his ability, while highly intoxicated, to slow down Hamby's Camaro as it went through the curve on Lawsonville Avenue at between 60 and 70 miles per hour. *Cf. Matheson v. City of Asheville*, 102 N.C. App. 156, 174, 402 S.E.2d 140, 150 (1991) (requiring foundational evidence of witness's prior, actual perception of the circumstances posited in a hypothetical question before allowing lay witness's opinion as to those circumstances). However, no such foundational evidence was presented by Ziglar in this case. As there was no evidence that Ziglar had ever perceived his ability to stop the car under the hypothetical circumstances, the trial court was correct in refusing to admit Ziglar's testimony.

Nevertheless, Ziglar argues that his lay opinion about stopping the vehicle, like his lay opinion about the vehicle's speed, should have

been admitted because, "[l]ike his opinion about the speed, it was based on his perceptions while actually driving the car." We disagree. While Ziglar's opinion as to the car's speed was based on Ziglar's actual opportunity to observe the car's speed while driving the car and, therefore, satisfied the Rule 701 foundational requirement, *see, e.g., Nationwide Mut. Ins. Co. v. Chantos*, 298 N.C. 246, 250, 258 S.E.2d 334, 336 (1979) ("It is well settled in North Carolina that a person of ordinary intelligence and experience is competent to state his opinion as to the speed of a vehicle *when he has had a reasonable opportunity to observe the vehicle and judge its speed.*" (emphasis added)), Ziglar's opinion as to the car's potential performance under hypothetical circumstances was never observed by Ziglar, or at least no evidence of such observation was offered by Ziglar. Accordingly, Ziglar's argument is without merit, and we conclude that the trial court did not abuse its discretion by precluding Ziglar from presenting his opinion on the hypothetical topic. Because this is the only error alleged by Ziglar with respect to the guilt phase of the trial, we find no error in the trial court's entry of judgment upon the jury's guilty verdict.

[2] As for the penalty phase of the trial, Ziglar argues that the trial court erred "when it overruled [Ziglar's] objection to proceeding on the alleged aggravating factor because . . . the aggravator was 'basically the same thing' that [Ziglar] was convicted of." While perhaps correct, Ziglar's argument overlooks N.C. Gen. Stat. § 15A-1444(a1), which provides that a defendant who has been found guilty "is entitled to appeal as a matter of right the issue of whether his or her sentence is supported by evidence introduced at the trial and sentencing hearing *only if* the minimum sentence of imprisonment does not fall within the presumptive range[.]" N.C. Gen. Stat. § 15A-1444(a1) (2009) (emphasis added).

In this case, Ziglar was convicted of felony death by vehicle, a Class E felony, and was sentenced as a record level III felony offender to an active sentence of 34 to 50 months. At the time of sentencing, in June 2009, the 34-month minimum sentence was within the presumptive range for Ziglar's prior record level and the class of offense. *See* N.C. Gen. Stat. § 15A-1340.17 (2007). Therefore, pursuant to section 15A-1444(a1), Ziglar is not entitled to appeal as a matter of right the issue of whether his sentence is supported by evidence introduced at the trial. N.C. Gen. Stat. § 15A-1444(a1). Moreover, Ziglar has not petitioned this Court to review the merits of his appeal by writ of

*certiorari.* Therefore, we hold Ziglar's argument is not properly before us, and accordingly, this argument is dismissed.

NO ERROR in judgment, DISMISSED in part.

Judges STEELMAN and HUNTER, JR., concur.