An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-917

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STATE OF NORTH CAROLINA

v.                                      Wayne County
                                        No. 10 CRS 55383
MARY BEASLEY FERRELL,
        Defendant.


Appeal by defendant from judgment entered 17 January 2013 by Judge John E. Nobles in Wayne County Superior Court. Heard in the Court of Appeals 11 December 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Brent D. Kiziah, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender David W. Andrews, for defendant-appellant.*


GEER, Judge.


Defendant Mary Beasley Ferrell appeals from her convictions of felony possession of cocaine and resisting a public officer. On appeal, defendant argues that the trial court committed plain error in admitting the arresting officer's testimony that he could have charged defendant with additional crimes based on her conduct in this case but, in order to show defendant mercy, he

did not do so. We hold that, assuming the evidence was improperly admitted, defendant has failed to show that any error constituted plain error. With respect to sentencing, however, we agree with defendant that the trial court erred by failing to permit defendant to make a personal statement to the court prior to sentencing. We, therefore, vacate defendant's sentence and remand for a new sentencing hearing.

## Facts

The State's evidence tended to show the following facts. At about 3:00 or 4:00 p.m. on 19 October 2010, Sergeant Matt Miller of the Wayne County Sheriff's Office was driving an unmarked Ford Explorer in a high-crime area in Goldsboro, North Carolina, when he saw defendant, an older white female, sitting alone in a pickup truck stopped at a stop sign. Sergeant Miller was the supervisor of the street level narcotics unit of the Wayne County Sheriff's Office and, at the time of trial, had been employed by the Wayne County Sheriff's Office for nine years, with eight years' specialization in narcotics. Sergeant Miller pulled his Explorer around so that it was parallel with defendant's truck and watched defendant for several seconds as defendant appeared to be manipulating something in her lap. Defendant did not notice Sergeant Miller.

Defendant's windows were down and, after several seconds, Sergeant Miller asked defendant, out of his open window, whether defendant was all right and whether she needed anything. At that time, Sergeant Miller was wearing a black polo shirt with a Sheriff's badge on the front left hand side, as well as a standard law enforcement gun belt displaying his badge. Upon noticing Sergeant Miller, defendant looked as if she "had seen a ghost" -- she seemed surprised and her "[e]yes were big." Defendant stuttered and "stumbled over her response," ultimately stating she was all right. While responding to the sergeant, defendant repeatedly glanced towards her lap. Defendant looked "depleted, as far as nourishment," and "her face was drawed up, skinny." Sergeant Miller noted that her appearance was consistent with that of a drug user.

Sergeant Miller exited his Explorer, approached defendant's window, and saw defendant's fists clenched in her lap like she was "trying to keep [Sergeant Miller] from getting whatever she had." He further saw some white crumbs on defendant's black pants that he believed were consistent with small amounts of crack cocaine that may have been broken off from a larger crack rock such as when a person breaks a larger rock into smaller rocks in order to smoke a smaller amount. Sergeant Miller had previously viewed crack cocaine "[a]lmost on a daily basis."

Sergeant Miller then grabbed defendant's left wrist through the open window and said, "Give it to me." Defendant, however, raised her right hand, threw a misshapen, off-white, rock-like object into her mouth, and began to chew and eat the object very quickly "as if she was trying to destroy some evidence." Sergeant Miller believed defendant was eating a crack rock worth about $100.00. The rock was the width of a thumbnail and as thick as the end of a finger. At that point, Sergeant Miller twisted defendant's left arm behind her back and ordered her to spit out the object multiple times, but defendant kept chewing and struggled to pull away from the sergeant. Sergeant Miller drew his "TASER," placed it under defendant's armpit, and told her to spit the object out or else he would tase her.

Before Sergeant Miller was able to tase defendant, she accelerated her truck and drove forward while the sergeant was "[i]nches" from the side of the truck. Despite Sergeant Miller telling defendant she was going to run him over, defendant continued accelerating and her truck "bumped" Sergeant Miller such that he had to "maneuver [himself] so [he] didn't get run over." Sergeant Miller then yelled at defendant to stop, and she stopped momentarily. The sergeant then shot defendant underneath the arm with his TASER probes, and she accelerated

again and drove away as Sergeant Miller "watched the wires that [were] connected to [his] TASER just snap in half."

Sergeant Miller pursued defendant in his Explorer for "a couple" of blocks, never losing sight of her, and defendant stopped only after driving down a dead end street. Sergeant Miller approached defendant's truck with his gun drawn and pulled open the door. Defendant, acting as if she had never seen Sergeant Miller before, said, "[W]hat the fuck do you want?" Sergeant Miller ordered defendant to get out of the truck, but she refused.

Sergeant Miller holstered his gun, pulled defendant out of the truck, and attempted to handcuff defendant, handling her gently because she was an "older lady." Defendant spun around, "slapped" the handcuffs out of Sergeant Miller's hand, "started GD'g about something," called the sergeant a "mother fucker," and "balled up her fists . . . like she wanted to fight." Sergeant Miller grabbed defendant again and placed her in handcuffs.

Sergeant Miller then returned to defendant's truck and saw "white crumbs all over the seat" that he believed were the same type of crack cocaine crumbs that he had previously seen in defendant's lap. A field test of some of the crumbs showed them to be cocaine. Subsequent laboratory testing of other crumbs

from the truck seat also showed the crumbs to be a "residue amount" of "a Schedule II controlled substance, cocaine hydrochloride."

Sergeant Miller spoke with defendant while she was in his Explorer, and defendant "began to cry and say that she had some things going on in her life." Sergeant Miller asked why defendant ran, and she replied it was because "she was in a predominantly black area, and [the sergeant] scared her." Sergeant Miller responded that he was a law enforcement officer and was "not black." Although defendant told Sergeant Miller, in response to his questioning, that she had eaten a pill, defendant could not say what type of pill it was. According to the sergeant, the object defendant ate did not look "at all" like a pill. Sergeant Miller showed defendant a pill bottle for nausea he had found in her truck and asked if she had taken a pill for nausea, and defendant said she had. Defendant told Sergeant Miller that her daughter was a crack user, and defendant was looking for her daughter that day. Defendant also asked Sergeant Miller to "have some kind of mercy on her" because, in addition to her daughter using crack, "her husband drank."

On 1 August 2011, defendant was indicted for possession of cocaine and resisting a public officer. Defendant testified in

her own defense at trial, and her testimony tended to show the following facts. Defendant was 66 years old at the time of trial. On the date of the charged offenses, defendant was stopped at a stop sign with "a BC" on her left leg and a pill bottle between her legs.

When approached by Sergeant Miller, whom defendant understood to be a "police officer," she told him, "I can't get this damn pill bottle open." Sergeant Miller then laughed, took out his TASER, and tased defendant. He never grabbed defendant's left hand prior to tasing her. Defendant, now scared, drove directly across the street and then stopped. Sergeant Miller then dragged defendant from the truck, "[t]hrew" her to the ground, called her a "crackhead whore" and a "piece of shit," and "ground on [her] heinie" with his boots before handcuffing her. Defendant introduced photographic exhibits which she stated showed serious bruises to her knees from when Sergeant Miller "beat" her and a "bad bruise" on her "back part" from when the sergeant "just ground, ground, ground." However, when EMS responded to the scene to check on defendant, defendant did not request any medical treatment.

Defendant further testified that the truck she was driving that day belonged to her ex-husband and that her two daughters, who both abused crack, would sometimes take the truck at night

without permission. On the day of the charged offenses, defendant was looking for one of her daughters because she wanted to help her daughter. Defendant did not use any illegal drugs, and she was not aware that there were any illegal drugs in the truck that day. According to defendant, she had already taken a Cymbalta pill when Sergeant Miller approached her, she never had anything in her hand during the encounter, and she never chewed anything in the sergeant's presence. When asked why she told Sergeant Miller that she had taken a nausea pill, defendant stated she kept her Cymbalta and her nausea pills in the same pill bottle. Defendant claimed she did not curse at Sergeant Miller, and she followed all of his commands.

Defendant admitted she had previously pled guilty to larceny from a Belk store. However, defendant claimed that the facts underlying that conviction involved her "exchanging a bracelet out" and that the trial judge in that case had subsequently ordered Belk "to give me back all my stuff because it was a mistake," and defendant "did not steal from them."

The jury found defendant guilty of felony possession of cocaine and resisting a public officer. The trial court consolidated the convictions into a single judgment and sentenced defendant to a presumptive-range term of five to six months imprisonment, but then suspended the sentence and placed

defendant on 18 months of supervised probation. Defendant timely appealed to this Court.

## Discussion

Defendant first argues that the trial court erred in admitting Sergeant Miller's testimony that he showed mercy on defendant by not charging her with additional crimes based on her conduct in this case. Defendant contends that the testimony was irrelevant under Rule 401 and that its probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues under Rule 403 of the Rules of Evidence.

During direct examination, Sergeant Miller testified that while he was speaking with defendant after her arrest, defendant asked Sergeant Miller if he "could have some kind of mercy on her" because defendant's husband drank and her daughter used crack. The prosecutor asked whether Sergeant Miller showed mercy to defendant, and the sergeant testified: "I did. I did. Against my own judgment I did." When asked how he showed mercy to defendant, Sergeant Miller testified: "I didn't charge her with a couple other charges that I could have charged her with. And I explained that to her."

Defendant concedes that she did not object to the admission of this testimony at trial, but nonetheless asks this Court to

review admission of the testimony for plain error. Our Supreme Court has explained that

> [f]or error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice -- that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations and quotation marks omitted).

Assuming, without deciding, that the trial court improperly admitted Sergeant Miller's testimony, defendant must still show that admission of the evidence had a probable impact on the jury's verdict. Defendant has not challenged on appeal Sergeant Miller's testimony that, after arresting defendant, he contacted a wrecker service to tow defendant's truck because "[he] thought [he] was going to charge" or "there was a possibility [he] was going to charge for the fleeing" and, pursuant to policy, he was supposed to tow the suspect's vehicle when a fleeing charge is issued. Thus, Sergeant Miller provided unchallenged testimony to one uncharged offense for which he considered charging defendant -- fleeing to elude arrest.

Further, defendant's version of the events required the jury to believe that the interaction started when Sergeant Miller, a sergeant with nine years' experience at the time of trial, approached defendant's truck, she stated she couldn't "get this damn pill bottle open," and then Sergeant Miller laughed and immediately, without any provocation, tased defendant on the spot. Defendant's version of events also required the jury to believe that after tasing defendant, a 66 year old woman at the time of trial, for no reason, Sergeant Miller proceeded to drag defendant from her truck, throw her to the ground, beat her, grind into her backside repeatedly with his boots, and curse her while doing so.

This Court has recognized that juries often give "significant weight" to the testimony of law enforcement officers with extensive experience. *See State v. Belk*, 201 N.C. App. 412, 418, 689 S.E.2d 439, 443 (2009) ("[B]ecause the witness was a police officer with eighteen years of experience, the jury likely gave significant weight to [the officer's] testimony."). By contrast, defendant admitted previously pleading guilty to larceny, thereby impeaching her credibility as a witness. Defendant, however, also denied that she ever actually committed the acts underlying her prior larceny conviction, further impeaching her credibility. Defendant

additionally claimed that she was badly injured by the sergeant's unprovoked attack on her, and yet she admitted she did not seek medical treatment when EMS arrived at the scene of her arrest.

In light of (1) the unchallenged testimony that Sergeant Miller considered charging, but ultimately did not charge, defendant with fleeing to elude arrest, (2) the improbability of defendant's version of events, (3) the significant weight the jury likely accorded to Sergeant Miller's testimony -- other than the challenged testimony -- given his nine years' experience as a law enforcement officer, and (4) the evidence impeaching defendant's credibility as a witness, we cannot conclude that the jury would probably have found defendant not guilty had the challenged testimony been excluded. Defendant has, therefore, failed to show plain error.

Defendant next contends the trial court erred by denying defendant her right to personally address the court prior to sentencing under N.C. Gen. Stat. § 15A-1334(b) (2013). The State, however, contends that defendant cannot raise this argument on direct appeal. In support of its argument, the State cites N.C. Gen. Stat. § 15A-1444(a1) (2013), which provides:

> A defendant who has been found guilty, or entered a plea of guilty or no contest to a

> felony, is entitled to appeal as a matter of right the issue of *whether his or her sentence is supported by evidence introduced at the trial and sentencing hearing* only if the minimum sentence of imprisonment does not fall within the presumptive range for the defendant's prior record or conviction level and class of offense. Otherwise, the defendant is not entitled to appeal this issue as a matter of right but may petition the appellate division for review of this issue by writ of certiorari.

(Emphasis added.)

The State's reliance on N.C. Gen. Stat. § 15A-1444(a1) fails to recognize that, here, defendant's argument is that the trial court failed to allow defendant an opportunity to present additional evidence during the sentencing hearing, by way of making a personal statement, and not that the evidence actually presented at trial and the sentencing hearing was insufficient to support defendant's sentence. Although the State cites *State v. Ziglar*, 209 N.C. App. 461, 465, 705 S.E.2d 417, 420 (2011), in support of its argument, the defendant there argued that the trial court erroneously allowed the State to proceed on an aggravating factor over the defendant's objection that "'the aggravator was basically the same thing that [the defendant] was convicted of.'" *Ziglar* is distinguishable because, unlike the present case, the *Ziglar* defendant's argument pertained to whether the trial court properly found an aggravating factor based on the evidence presented.

We hold that despite the trial court's imposition of a presumptive-range sentence, N.C. Gen. Stat. § 15A-1444(a1) does not foreclose consideration of defendant's argument on direct appeal since the argument does not concern "whether [defendant's] sentence is supported by evidence introduced at the trial and sentencing hearing." *See State v. Hagans*, 188 N.C. App. 799, 801 n.2, 656 S.E.2d 704, 706 n.2 (2008) (explaining that N.C. Gen. Stat. § 15A-1444(a1) did not bar direct appeal of issue whether sentencing judge was biased since issue did not pertain to whether defendant's sentence was supported by evidence introduced at trial and sentencing hearing). We, therefore, review defendant's argument.

After the jury rendered its verdict, the trial court asked defendant to stand and the following exchange occurred:

> THE COURT: [Defendant], one of the worst jobs a police officer can have, and I'm not trying to fuss with you, but one of the worst jobs they can have is getting put in a situation that this Court feels like you put this police officer in.
>
> THE DEFENDANT: May I say something --
>
> THE COURT: I'm not asking --
>
> THE DEFENDANT: -- about it?
>
> THE COURT: No, I'm not asking you for any comment.

I can't put you in jail. This is a Class I felony, and it just calls for community punishment. But I just want you to understand that that's a bad thing. That's the way this Court sees it. You're lucky that it falls into a Class I, the possession of cocaine.

THE DEFENDANT: Well, what about him beating me and all that though?

THE COURT: Well, I'm not asking you for any comment; I'm just trying to explain to you my position.

THE DEFENDANT: Oh.

([Defense counsel] speaks to the Defendant.)

THE COURT: The jury has convicted you. As I've always thought, under the facts that they heard, they did just exactly right, so I'm going to impose a sentence.

The trial court then sentenced defendant without further comment.

"Allocution, or a defendant's right to make a statement in his own behalf before the pronouncement of a sentence, was a right granted a defendant at common law." *State v. Miller*, 137 N.C. App. 450, 460, 528 S.E.2d 626, 632 (2000). That right has been codified in N.C. Gen. Stat. § 15A-1334(b), which provides: "The defendant at the hearing may make a statement in his own behalf." This Court has previously explained that "'N.C. Gen. Stat. § 15A-1334(b) expressly gives a non-capital defendant the right to make a statement in his own behalf at his sentencing

hearing' if the defendant requests to do so prior to the pronouncement of sentence." *Miller*, 137 N.C. App. at 461, 528 S.E.2d at 632 (quoting *State v. Rankins*, 133 N.C. App. 607, 613, 515 S.E.2d 748, 752 (1999)).

In *Miller*, at sentencing, after defense counsel made a sentencing argument on the defendant's behalf, the trial court asked whether defense counsel and the prosecutor had anything further to offer for sentencing and each stated he did not. *Id.* at 460, 528 S.E.2d at 632. The court then instructed the defendant to stand and, prior to the court imposing defendant's sentence, defense counsel asked, "'Your Honor, may he be heard?'" *Id.* The court responded, "'No, sir. No, sir[,]'" and proceeded to sentence the defendant. *Id.* On appeal, this Court held that because the defendant requested to make a personal statement to the court prior to sentencing and was refused the opportunity, the defendant was entitled to a new sentencing hearing. *Id.* at 461, 528 S.E.2d at 632.

Similarly, here, defendant asked for an opportunity to personally address the court prior to sentencing, but the court denied her request, stating: "No, I'm not asking you for any comment." Although defendant subsequently interposed a short statement -- "Well, what about him beating me and all that

though?" -- the court's response to that statement was, again, "Well, I'm not asking you for any comment . . . ."

Since the court twice made clear it was not permitting defendant an opportunity to make a statement, defendant's brief, forced comment does not satisfy the court's obligation to allow defendant an opportunity to make a personal statement, upon request, prior to sentencing. Consequently, as in *Miller*, we must vacate defendant's sentence and remand for resentencing. *See also State v. McRae*, 70 N.C. App. 779, 781, 320 S.E.2d 914, 915-16 (1984) ("Where the trial judge may have been uninformed as to relevant facts because of his failure to afford the defendant a proper sentencing hearing, which is a critical stage of a criminal proceeding, we are restrained from saying defendant has not been prejudiced." (internal citation omitted)).

No error in part; vacated in part and remanded for resentencing.

Judges BRYANT and CALABRIA concur.

Report per Rule 30(e).