IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-350

No. COA20-215

Filed 20 July 2021

Warren County, Nos. 17 CRS 2–4

STATE OF NORTH CAROLINA

v.

MICHAEL STEVEN ELDER

Appeal by defendant from judgments entered 3 April 2019, and by petition for writ of certiorari from an order entered 7 April 2019, by Judge Josephine Kerr Davis in Warren County Superior Court. Heard in the Court of Appeals 27 April 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Benjamin O. Zellinger, for the State.*

*Ward, Smith & Norris, P.A., by Kirby H. Smith, III, for defendant-appellant.*

ZACHARY, Judge.

¶ 1 Defendant Michael Steven Elder appeals from judgments entered upon a jury's verdicts finding him guilty of felonious breaking or entering, felonious common-law robbery, assault inflicting serious injury, second-degree sexual offense, first-degree rape, and two counts of first-degree kidnapping. He also appeals from the civil judgment entered against him for his court-appointed attorney's fees. On appeal, Defendant argues that the trial court erred by (1) denying his motions to dismiss the

charges of first-degree rape, first-degree kidnapping, and common-law robbery; (2) admitting a nurse as an expert witness and allowing her to authenticate the victim's medical records; (3) admitting hearsay statements made by the victim; (4) sentencing Defendant for both first-degree rape and first-degree kidnapping; and (5) entering a civil judgment for attorney's fees without providing Defendant with notice and an opportunity to be heard. After careful review, we conclude that the trial court erred in denying Defendant's motion to dismiss one charge of first-degree kidnapping ("Count III"), and that the trial court erred by imposing a sentence on both the first-degree rape conviction and the remaining first-degree kidnapping conviction. Otherwise, Defendant received a trial free from error. However, we conclude that the trial court erred in entering a civil judgment against Defendant for attorney's fees without providing him with notice and an opportunity to be heard, and therefore, we vacate the civil judgment for attorney's fees. Accordingly, we reverse Defendant's second kidnapping conviction, and remand the matter to the trial court for resentencing and for a hearing regarding the imposition of attorney fees.

## *Background*

### I. Factual Background

On 7 July 2007, A.H.[1] was 80 years old and lived alone in Afton, North

---

[1] In order to protect the identity of the victim, we refer to her by her initials.

Carolina. She was tending the flower garden in her front yard when she noticed a light-colored car slowly drive by, turn around, and then head back toward her house. She went inside and locked the storm door behind her.

¶ 3    Shortly thereafter, a man carrying a black satchel knocked on her door. A.H. opened the exterior door but kept the storm door locked. The man offered to demonstrate a vacuum cleaner. A.H. informed him that she was not interested in his services, and he offered his card should she change her mind. When A.H. unlocked the storm door and reached out her hand to take the card, the man grabbed her hand, pushed the door open, and entered her home. The man asked where she kept her money, and A.H. told him that she did not have any money. After binding her hands and feet with a black cord, the man shoved her toward a bedroom, pushed her onto the bed, and began to remove her clothes. The man "pulled his penis out[,]" told A.H. that he needed money, and demanded her jewelry. As he removed the jewelry that she was wearing, the man asked A.H. how long it had been since she "had been f*****."

¶ 4    After raping A.H. and forcing her to perform oral sex on him, the man began rifling through her dresser drawers, inquiring as to where she kept "her good stuff." He looked through A.H.'s pocketbooks and located approximately $450 in cash in her billfold.

¶ 5    A.H. told the man that her daughter was on her way to the house; he replied

that he would kill A.H.'s daughter if she arrived before he left. The man then tied A.H.'s hands and put her in a bedroom closet. A.H. told him that she could not breathe in the closet, so he tied her to a chair in a different bedroom. The man informed A.H. that he was going to take a shower and left the room; A.H. heard the water running in the bathroom.

¶ 6 Eventually, A.H. was able to untie herself. Although the water was still running in the bathroom, she did not see the light-colored car outside her house. A.H. then checked the bathroom and saw that the man was gone. She called her daughter Linda, and her daughter's husband Harry answered the phone. A.H. told him that she had been raped and robbed, and Linda and Harry hurried to her home. Upon their arrival, Linda and Harry found that the storm door had been partially torn away from the doorjamb.

¶ 7 Law enforcement officers and EMS personnel arrived shortly thereafter. EMS personnel transported A.H. to Maria Parham Hospital by ambulance. However, hospital personnel there could not complete a rape kit, so A.H. was transferred to WakeMed Hospital. At WakeMed, Sexual Assault Nurse Examiner ("SANE") Cindy Carter administered a rape kit, and provided the kit and other evidence collected from A.H. to Detective Sergeant Ben Jackson of the Warren County Sheriff's Office. Warren County law enforcement officers then submitted the rape kit to the State Bureau of Investigation ("SBI") Crime Lab for DNA processing.

¶ 8        Special Agent Russell Holley of the SBI forensic serology department identified sperm cells in smears collected from the rape kit. On A.H.'s underwear, Forensic Scientist Supervisor Timothy Baize of the State Crime Lab detected a mixture of DNA that was consistent with A.H.'s DNA along with that of one unknown male contributor.

¶ 9        A.H. died on 18 December 2015, and her attacker remained unidentified. Then, on 12 April 2016, Det. Sgt. Jackson received a letter from the State Crime Lab, which prompted him to contact the New York Police Department's forensic investigations liaison unit. Based on that communication, Det. Sgt. Jackson acquired and executed a search warrant to collect a sample of Defendant's DNA.

¶ 10       Officers collected a cheek swab from Defendant and submitted the swab to the State Crime Lab on 19 July 2016. On 17 January 2019, the State Crime Lab produced a report that concluded that Defendant's DNA was consistent with the sample collected from A.H.'s underwear. At trial, Mr. Baize testified regarding the significance of his findings:

> The probability of randomly selecting an unrelated individual with a D-N-A profile that is consistent with the D-N-A profile[ ] obtained from the second contributor, from the sperm fraction of the cutting from the panties, is approximately 1 in 10.7 trillion in the Caucasian population, one in 63.0 billion in the African-American population, and one in 312 billion in the Hispanic population.

Defendant was thereby identified from the DNA evidence.

## II. Procedural History

¶ 11       On 17 January 2017, a Warren County grand jury indicted Defendant for one count of felony breaking or entering, one count of common-law robbery, one count of assault with a deadly weapon inflicting serious injury, one count of first-degree forcible sexual offense, one count of first-degree rape, and two counts of first-degree kidnapping. One count of first-degree kidnapping was based on Defendant's "moving [A.H.] from the kitchen to the back bedroom," and a second was based on Defendant's "moving [A.H.] from the back bedroom to another bedroom and put[ting] her into a closet." The State alleged that Defendant committed both kidnappings "for the purpose of facilitating the commission of a felony, first degree rape[.]" On 11 April 2017, officers executed a warrant for Defendant's arrest.

¶ 12       Defendant's case came on for trial on 27 March 2019 before the Honorable Josephine Kerr Davis in Warren County Superior Court. At the close of the State's evidence, Defendant moved to dismiss the charges against him for insufficient evidence and the trial court denied the motion. Defendant did not present evidence, and at the close of all evidence, renewed his motion to dismiss. The trial court denied the motion.

¶ 13       On 3 April 2019, the jury found Defendant guilty of felonious breaking or entering, felonious common-law robbery, assault inflicting serious injury, second-

degree sexual offense, first-degree rape, and two counts of first-degree kidnapping. After consolidating Defendant's convictions for second-degree sexual offense, common-law robbery, and misdemeanor assault inflicting serious injury, the trial court entered judgment sentencing Defendant to a minimum of 84 and a maximum of 110 months of imprisonment. The trial court then consolidated Defendant's convictions for first-degree rape and two counts of first-degree kidnapping, and sentenced Defendant to a minimum of 240 and a maximum of 297 months of imprisonment, to run consecutively.

¶ 14     Defendant gave notice of appeal in open court.

¶ 15     On 7 April 2019, the trial court entered a civil judgment against Defendant in the amount of $17,212.50 for fees owed to his court-appointed attorney.

## *Analysis*

¶ 16     Defendant raises several arguments on appeal. Defendant initially argues that the trial court erred by denying his motions to dismiss the charges of first-degree rape, first-degree kidnapping, and common-law robbery. Defendant also contends that the trial court erred by admitting Nurse Marlene Malcolm as an expert witness and allowing Ms. Malcolm to authenticate A.H.'s medical records, and additionally, that the trial court committed plain error by admitting hearsay testimony. He further argues that the trial court erred by failing either to (1) arrest judgment on one first-degree kidnapping conviction and sentence him for second-degree kidnapping, or (2)

arrest judgment on the first-degree rape conviction and sentence him on both first-degree kidnapping convictions. Finally, Defendant has filed a petition for a writ of certiorari requesting that this Court review the civil judgment for attorney's fees. Defendant maintains that the trial court erred by imposing a civil judgment against him without first providing him with notice and an opportunity to be heard on the issue of attorney's fees. We address each argument in turn.

## I.    Motions to Dismiss

¶ 17        We first consider Defendant's assertion that the trial court erred in denying his motion to dismiss the charges of first-degree rape, first-degree kidnapping, and common-law robbery. We conclude that the State presented sufficient evidence to submit the charges of first-degree rape and common-law robbery to the jury; however, the trial court erred by denying Defendant's motion to dismiss Count III, one of the first-degree kidnapping charges, due to insufficient evidence.

### A. Standard of Review

¶ 18        A timely motion to dismiss based on the sufficiency of the evidence preserves for appellate review "all challenges to the sufficiency of the evidence[.]" *State v. Golder*, 374 N.C. 238, 248, 839 S.E.2d 782, 789 (2020). This Court reviews challenges to the sufficiency of the evidence de novo. *Id.* at 250, 839 S.E.2d at 790. "Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser

offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (citation omitted). We review "the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Id.* at 596, 573 S.E.2d at 869 (citation omitted). "Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *Id.* (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). The Court may consider both direct and circumstantial evidence, "even when the evidence does not rule out every hypothesis of innocence." *State v. Winkler*, 368 N.C. 572, 575, 780 S.E.2d 824, 826 (2015) (citation omitted).

**B. First-Degree Rape**

¶ 19        Defendant argues that the trial court erred by denying his motion to dismiss the charge of first-degree rape because the State failed to present sufficient evidence that Defendant (1) engaged in vaginal intercourse with A.H., (2) used a dangerous or deadly weapon during the commission of the rape, or (3) caused a serious personal injury. We disagree.

¶ 20        First-degree rape is defined by statute as follows:

> (a) A person is guilty of rape in the first degree if the person
> engages in vaginal intercourse:

> . . . .
>
> (2) With another person by force and against the will of the other person, and:
>
>> a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or
>>
>> b. Inflicts serious personal injury upon the victim or another person; or
>>
>> c. The person commits the offense aided and abetted by one or more other persons.

N.C. Gen. Stat. § 14-27.2(a)(2) (2007).[2]

Defendant first argues that the State did not present sufficient evidence of vaginal intercourse. We disagree.

With regard to evidence of vaginal intercourse, "[t]he slightest penetration of the female sex organ by the male sex organ is sufficient to constitute vaginal intercourse within the meaning of the statute." *State v. McNicholas*, 322 N.C. 548, 556, 369 S.E.2d 569, 574 (1988).

Here, there was ample testimony in support of penetration. A.H.'s son-in-law Harry testified that A.H. told him that she had been "raped." A.H.'s daughter Linda testified that A.H. told her that she had been "raped" and that A.H. told her that the

---

[2] This crime has since been recodified, without substantial changes, as first-degree forcible rape. *See* N.C. Gen. Stat. § 14-27.21(a) (2019).

perpetrator "took off her underwear[,] penetrated her[,] and made remarks such as . . . 'Did your husband's ever feel like this? Was your husband's this big?' " Sergeant Edward Phillips of the Warren County Sheriff's Office testified that when he responded to A.H.'s home after the attack, she told him that the perpetrator had "pulled her pants down and raped her." Another of A.H.'s daughters, Jeanette Harris, testified that A.H. said that the perpetrator "got on top of her and penetrated her vagina." Det. Sgt. Jackson testified that A.H. told him that the perpetrator "got on top of her and asked her . . . when was the last time she had been f*****" and that "he had sex with her[.]" Special Agent Holley testified that he identified sperm cells on the underwear collected from A.H.

¶ 24        Thus, "taking into account the definition of vaginal intercourse previously set out, we conclude there was substantial evidence that [D]efendant engaged in vaginal intercourse with the victim." *Id.* at 557, 369 S.E.2d at 574.

¶ 25        Defendant further contends that the State presented insufficient evidence of any of the other factors necessary to submit a charge of first-degree rape to the jury: specifically, Defendant argues that the State presented insufficient evidence that he "[e]mploy[ed] or display[ed] a dangerous or deadly weapon or an article which [A.H.] reasonably believe[d] to be a dangerous or deadly weapon[,]" or that he "[i]nflict[ed]

serious personal injury upon" A.H. N.C. Gen. Stat. § 14-27.2(a)(2)(a)–(b) (2007).[3]

Because we conclude that the State's evidence that Defendant inflicted serious

personal injury upon A.H. was sufficient to send the charge of first-degree rape to the

jury, we do not address Defendant's challenge to the sufficiency of the State's evidence

regarding Defendant's employment or display of a dangerous weapon.

Proof of the element of "serious personal injury" for first-degree rape "may be

met by the showing of mental injury as well as bodily injury." *State v. Boone*, 307 N.C.

198, 204, 297 S.E.2d 585, 589 (1982), *overruled on other grounds by State v.*

*Richmond*, 347 N.C. 412, 495 S.E.2d 677, *cert. denied*, 525 U.S. 843, 142 L. Ed. 2d 88,

*reh'g denied*, 525 U.S. 1034, 142 L. Ed. 2d 483 (1998). In *Boone*, our Supreme Court

explained the degree of mental anguish that the State must show to constitute a

"serious personal injury" in order to elevate a rape to first degree:

> It is impossible to enunciate a "bright line" rule as to when
> the acts of an accused cause mental upset which could
> support a finding of "serious personal injury." It would defy
> reason and common sense to say that there could be a
> forcible rape or forcible sexual offense which did not
> humiliate, terrorize and inflict some degree of mental
> injury upon the victim. Yet, the legislature has seen fit to
> create two degrees of rape and provide that one of the
> elements which may raise the degree of the crime from
> second degree to first-degree rape is the infliction of
> "serious personal injury." . . . We therefore believe that the
> legislature intended that ordinarily the mental injury
> inflicted must be more than the *res gestae* results present

---

[3] Defendant raises no argument regarding N.C. Gen. Stat. § 14-27.2(a)(2)(c).

in every forcible rape and sexual offense. In order to support a jury finding of serious personal injury because of injury to the mind or nervous system, the State must ordinarily offer proof that such injury was not only caused by the defendant but that the injury extended for some appreciable time beyond the incidents surrounding the crime itself. Obviously, the question of whether there was such mental injury as to result in "serious personal injury" must be decided upon the facts of each case.

*Id.* at 205, 297 S.E.2d at 589–90.

¶ 27 "*Res gestae* results are those so closely connected to an occurrence or event in both time and substance as to be a part of the happening." *State v. Finney*, 358 N.C. 79, 90, 591 S.E.2d 863, 869 (2004) (citation and internal quotation marks omitted). Therefore, in order to prove a serious personal injury based on mental injury, the State must prove "that the mental injury extend[ed] for some appreciable time beyond the incidents surrounding the rape and that it is a mental injury beyond that normally experienced in every forcible rape." *State v. Baker*, 336 N.C. 58, 64, 441 S.E.2d 551, 554 (1994).

¶ 28 The State shows sufficient evidence of serious personal injury based on bodily injury where it offers evidence of

injury inflicted on the victim to overcome resistance or to obtain submission, injury inflicted upon the victim . . . in an attempt to commit the crimes or in furtherance of the crimes[,] . . . or injury inflicted upon the victim . . . for the purpose of concealing the crimes or to aid in the assailant's escape.

*State v. Blackstock*, 314 N.C. 232, 242, 333 S.E.2d 245, 252 (1985).

¶ 29    In the instant case, the State offered evidence that A.H. was admitted to the hospital and remained there for one or two nights because "she was unable to be discharged due to her pain, and she wasn't able to sit up and walk[.]" Jeanette testified that her mother's arms were bleeding after the attack and that she suffered scratches and bruises on her face and arms. The State also offered evidence that, although A.H. had lived alone prior to the attack, afterward, "she was extremely afraid to stay by herself at night." After the rape, one of A.H.'s five children stayed with her every night, so that she usually did not spend the night alone. Linda testified that this rotation continued until A.H. broke her hip and moved to a nursing home in April of 2015. A.H. also would not answer the door if a stranger knocked.

¶ 30    We conclude that this evidence was sufficient to prove that Defendant inflicted serious personal injury upon A.H., and was therefore sufficient to send the charge of first-degree rape to the jury.

## C. First-Degree Kidnapping

¶ 31    Defendant was convicted of two counts of first-degree kidnapping. In the indictment, the State alleged that Defendant perpetrated both kidnappings "for the purpose of facilitating the commission of a felony, first degree rape," with the first kidnapping occurring when Defendant moved A.H. "from the kitchen to the back bedroom[,]" before he raped her, and the second kidnapping occurring when he moved

A.H. "from the back bedroom to another bedroom and put her into a closet[,]" after the rape was complete.

¶ 32    Defendant challenges the second kidnapping charge on the basis that all of the evidence tended to show that Defendant had completed the offense of first-degree rape prior to moving A.H. from one bedroom to another, and therefore he could not have moved A.H. "for the purpose of facilitating the commission of" first-degree rape. We agree and reverse Defendant's first-degree kidnapping conviction on Count III.

¶ 33    N.C. Gen. Stat. § 14-39 defines first-degree kidnapping, in pertinent part, as follows:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
>     . . . .
>
>     (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony;
>
>     . . . .
>
> (b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony.

N.C. Gen. Stat. § 14-39(a)(2), (b) (2007).

¶ 34    In *State v. Jordan*, our Court explained that "an indictment under N.C. Gen. Stat. § 14-39(a)(2) need not allege the exact type of felony furthered by the restraint or confinement[.]" 186 N.C. App. 576, 584, 651 S.E.2d 917, 922 (2007), *disc. review denied*, 362 N.C. 241, 660 S.E.2d 492 (2008). However, in order for the State to prove that the defendant committed the kidnapping for the purpose of facilitating a felony, "the felony that is the alleged purpose of the kidnapping must occur after the kidnapping." *Id.*; *see also State v. Brooks*, 138 N.C. App. 185, 190–92, 530 S.E.2d 849, 853–54 (2000).

¶ 35    Moreover, although § 14-39(a)(2) permits a first-degree kidnapping conviction where the defendant committed the kidnapping either for the purpose of facilitating the commission of a felony *or* for the purpose of facilitating flight of any person after the commission of a felony, the State is obliged to prove the allegations made in the indictment. *See State v. Morris*, 147 N.C. App. 247, 251–53, 555 S.E.2d 353, 355–56 (2001) (reversing kidnapping conviction where the State alleged that the defendant kidnapped the victim to facilitate a rape, but the evidence tended to show only that the defendant kidnapped the victim to facilitate his flight *after* the rape), *aff'd per curiam*, 355 N.C. 488, 562 S.E.2d 421 (2002); *see also State v. White*, 307 N.C. 42, 48, 296 S.E.2d 267, 270 (1982) ("When an indictment alleges an intent to commit a particular felony, the [S]tate must prove the particular felonious intent alleged.").

¶ 36         Our Court's majority decision in *Morris* controls the outcome here. In that case, the defendant was charged with one count each of second-degree rape and second-degree kidnapping after luring the victim into an apartment, assaulting her, raping her, and then locking her in a storage closet outside of the apartment. 147 N.C. App. at 248–49, 555 S.E.2d at 353–54. The indictment charging the defendant with second-degree kidnapping stated that he "kidnapped the victim for the purpose of facilitating the commission of a felony [namely, second-degree rape]. The indictment made no mention of facilitating [the] defendant's flight following the commission of a felony." *Id.* at 250, 555 S.E.2d at 355. Our Court noted that all of the evidence tended to show that the rape occurred *before* the kidnapping. *Id.* at 251, 555 S.E.2d at 355. It further noted that,

> [w]hile there is little question [the] defendant's actions made his flight from the scene easier and was an attempt to cover up his act, the removal of the victim to the storage closet in no way made [the] defendant's rape of her easier, as all of the elements of rape were completed before the removal.

*Id.* at 252–53, 555 S.E.2d at 356. In so observing, our Court rejected the State's argument that the kidnapping "facilitated" the defendant's rape of the victim by preventing her escape. *Id.* at 252, 555 S.E.2d at 356. Because "the evidence [did] not support the charge stated in the indictment," a majority of our Court reversed the

defendant's second-degree kidnapping conviction. *Id.* at 253, 555 S.E.2d at 356.[4]

¶ 37 Here, the State alleged that Defendant committed Count III when he moved A.H. "from the back bedroom to another bedroom and put her into a closet[,]" which the parties agree occurred after Defendant committed first-degree rape. Thus, because "the felony that is the alleged purpose of the kidnapping must occur after the kidnapping[,]" we must reverse Defendant's first-degree kidnapping charge on Count III. *Jordan*, 186 N.C. App. at 584, 651 S.E.2d at 922.

¶ 38 We note that both of Defendant's first-degree kidnapping convictions and his rape conviction were consolidated for sentencing. Therefore, we remand the judgment in 17 CRS 4 for resentencing. Because "it is probable that a defendant's conviction for two or more offenses influences adversely to him the trial court's judgment on the length of the sentence to be imposed when these offenses are consolidated for judgment," our Supreme Court has cautioned that "the better procedure" is to remand to the trial court for resentencing when this Court reverses one or more but not all of the convictions consolidated for judgment. *State v. Wortham*, 318 N.C. 669, 674, 351

---

[4] One judge dissented from the majority in *Morris*, and would have held that, based on *State v. Hall*, 305 N.C. 77, 286 S.E.2d 552 (1982), *overruled on other grounds by State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986), our Court should decline to find a "bright line distinction between 'facilitating the commission of any felony' and 'facilitating flight[.]'" *Morris*, 147 N.C. App. at 254, 555 S.E.2d at 357 (Walker, J., dissenting). Our Supreme Court rejected the position of the dissent and affirmed *Morris* per curiam. 355 N.C. 488, 562 S.E.2d 421.

S.E.2d 294, 297 (1987).

### D. Common-Law Robbery

¶ 39        Defendant next asserts that the trial court erred by denying his motion to dismiss the charge of common-law robbery because the State failed to offer sufficient evidence that anything was taken from A.H.'s person or presence. We disagree.

¶ 40        Common-law robbery requires proof that the defendant committed a "felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Smith*, 305 N.C. 691, 700, 292 S.E.2d 264, 270, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). "The force element required for common law robbery requires violence or fear sufficient to compel the victim to part with his property or to prevent resistance to the taking." *State v. Elkins*, 210 N.C. App. 110, 113–14, 707 S.E.2d 744, 748 (2011) (citation and internal quotation marks omitted). Proof of either violence or fear is sufficient to meet the force element. *Id.*

¶ 41        Here, the State offered evidence that A.H. called her daughter and son-in-law shortly after Defendant left her home and said that "she had been robbed and raped, and tied up." In addition, the State presented evidence that, as soon as Defendant forced his way into A.H.'s house, he asked where she kept her money. A.H. told her daughter Jeanette that Defendant ripped off her jewelry while he assaulted her, and she told Det. Sgt. Jackson that Defendant demanded her money and jewelry. The

State further offered evidence that, after raping A.H. and while her hands and feet were bound, Defendant "started going through all of her drawers and wanted to know where she kept her good stuff." A.H. also told Jeanette that Defendant said that "he wanted money to go to Florida[,]" and that he went through her pocketbook and removed approximately $450 from A.H.'s billfold. A.H.'s daughter Linda testified that A.H. kept a ring on top of her dresser, and that the ring was missing after Defendant searched through her dresser. Linda also testified that the previous Friday she and A.H. had replenished A.H.'s "five dollar stash"—a cache of $5 bills that A.H. sent with birthday cards. Linda testified that the $5 bills were stored in A.H.'s pocketbook, and that after the attack, the five-dollar stash was "gone, along with [A.H.'s] food stamps and her Medicaid card and drivers license[.]"

¶ 42          We conclude that the State presented sufficient evidence of common-law robbery to send the charge to the jury. The evidence tended to show that A.H. was tied to a chair while Defendant rifled through her dresser and pocketbooks; that evidence is sufficient to show that Defendant used force "to prevent resistance to the taking." *Id.* (citation omitted). The evidence also showed that the cash in A.H.'s pocketbook, a ring, her food stamps, her Medicaid card, and her driver's license were missing after Defendant left. This evidence is sufficient to create "a reasonable inference[,]" *Scott*, 356 N.C. at 596, 573 S.E.2d at 869, of the "non-consensual taking of money or personal property" from A.H.'s presence, *Smith*, 305 N.C. at 700, 292

S.E.2d at 270. Viewing "the evidence in the light most favorable to the State, [and] giving the State the benefit of all reasonable inferences[,]" *Scott*, 356 N.C. at 596, 573 S.E.2d at 869, we conclude that the State presented sufficient evidence to send the charge of common-law robbery to the jury.

## II. Evidentiary Issues

Defendant next raises several arguments relating to the admission of evidence. He argues that the trial court erred by admitting Nurse Marlene Malcolm as an expert witness without sufficient notice from the State, by permitting Ms. Malcolm to authenticate A.H.'s medical records, and by admitting hearsay statements of A.H.

### A. Expert-Witness Qualifications

Defendant asserts that the trial court erred by admitting Ms. Malcolm as an expert witness because the State had not provided Defendant with notice of the State's intent to call Ms. Malcolm as an expert witness, and because Ms. Malcolm was not a certified SANE. However, Defendant does not contend that Ms. Malcolm testified to any improper expert opinion. Defendant's argument, therefore, seems to be twofold: First, that the State committed a discovery violation by failing to provide Defendant with sufficient notice of its intent to call Ms. Malcolm as an expert; and second, that the trial court abused its discretion by allowing Ms. Malcolm to testify regarding "her expertise in the sexual assault victim's kit collection process" because she was not sufficiently qualified as an expert. We disagree with both arguments.

At trial, the State called Ms. Malcolm to testify as an expert in the "sexual assault victim kit collection process[.]" Defendant objected, arguing that the State had neither provided him with the requisite notice of its intent to call Ms. Malcolm as an expert witness nor provided him with the substance of the expert opinion that she would offer at trial. Defendant also argued that Ms. Malcolm was not qualified to testify as an expert because she was not a certified SANE. The trial court overruled Defendant's objection and permitted Ms. Malcolm to testify as an expert witness.

To the extent that Defendant raises an argument regarding an alleged discovery violation, we review that claim for an abuse of discretion. *State v. Pender*, 218 N.C. App. 233, 240, 720 S.E.2d 836, 841, *appeal dismissed and disc. review denied*, 366 N.C. 233, 731 S.E.2d 414 (2012), *cert. dismissed*, 374 N.C. 262, 839 S.E.2d 845 (2020). "An abuse of discretion will be found where the ruling was so arbitrary that it cannot be said to be the result of a reasoned decision." *Id.* (citation omitted).

N.C. Gen. Stat. § 15A-903 governs discovery matters in criminal cases:

> (a) Upon motion of the defendant, the court must order:
>
> . . . .
>
> > (2) The prosecuting attorney to give notice to the defendant of any expert witnesses that the State reasonably expects to call as a witness at trial. Each such witness shall prepare, and the State shall furnish to the defendant, a report of the results of any examinations or tests conducted by the expert. The State shall also furnish to the defendant the

> expert's curriculum vitae, the expert's opinion, and the underlying basis for that opinion. The State shall give the notice and furnish the materials required by this subsection within a reasonable time prior to trial, as specified by the court. . . .

N.C. Gen. Stat. § 15A-903(a)(2). When a party voluntarily provides materials in response to a discovery request, "the discovery is deemed to have been made under an order of the court for the purposes of this Article." *Id.* § 15A-902(b).

¶ 48    Section 15A-910 provides the remedies available to a party alleging a discovery violation. In its discretion, the trial court may: "(1) [o]rder the party to permit the discovery or inspection, or (2) [g]rant a continuance or recess, or (3) [p]rohibit the party from introducing evidence not disclosed, or (3a) [d]eclare a mistrial, or (3b) [d]ismiss the charge, with or without prejudice, or (4) [e]nter other appropriate orders." *Id.* § 15A-910(a). "Although the court has the authority to impose such discovery violation sanctions, it is not required to do so." *State v. Hodge*, 118 N.C. App. 655, 657, 456 S.E.2d 855, 856 (1995). Because "[t]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate[, w]hich of the several remedies available under G.S. 15A-910(a) should be applied in a particular case is a matter within the trial court's sound discretion." *Pender*, 218 N.C. App. at 242, 720 S.E.2d at 842 (citations and internal quotation marks omitted).

¶ 49    Here, the prosecutor "readily admit[ted] we've not given any notice as to what

her opinion would be if there was one." The State informed the trial court that it intended to offer Ms. Malcolm's testimony "to go through the sexual assault victim's kit collection process as it would be in the emergency department" at WakeMed in July 2007. The trial court ruled that Ms. Malcolm could testify regarding the general procedures for the sexual assault victim's kit collection, but could not offer any expert opinion beyond that testimony:

> [Ms. Malcolm may] testify as it relates to her expertise in the sexual assault victim's kit collection process as she would've understood it and participated in that process in 2007, with the understanding [that] Ms. Malcolm is not to testify as it relates to any expertise with regard[ ] to that collection, any medical opinions derived from that collection.

Even assuming a technical violation of the discovery statute, the trial court limited Ms. Malcolm's testimony in accordance with the discretion granted by § 15A-910. Defendant has not shown that the trial court abused its discretion.

¶ 50 We also review for an abuse of discretion the trial court's decision to qualify a witness as an expert. *State v. McGrady*, 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016). In the instant case, we cannot conclude that the trial court abused its discretion by permitting Ms. Malcolm to testify regarding "her expertise in the sexual assault victim's kit collection process[.]"

¶ 51 Rule 702(a) of the North Carolina Rules of Evidence ("the Rules") requires that, in order for a witness to be admitted as an expert, the witness must be "qualified as

an expert by knowledge, skill, experience, training, or education[.]" N.C. Gen. Stat. § 8C-1, Rule 702(a). Our Supreme Court in *McGrady* explained that the question courts must ask when faced with the qualification of a witness as an expert is: "Does the witness have enough expertise to be in a better position than the trier of fact to have an opinion on the subject?" 368 N.C. at 889, 787 S.E.2d at 9. "Expertise can come from practical experience as much as from academic training." *Id.*

¶ 52        On voir dire, Ms. Malcolm testified that she had a degree in nursing, and that she received her North Carolina SANE certification in 1997 and her national SANE certification in 2009. Ms. Malcolm further testified that she had collected approximately 150 sexual assault victim kits, and that she had trained approximately ten nurses in the sexual assault victim kit evidence collection process throughout her career. When A.H. was admitted to WakeMed Hospital in 2007, Ms. Malcolm was a staff nurse in the emergency department and treated A.H.

¶ 53        Ms. Malcolm's testimony during voir dire revealed that she had approximately two decades of experience collecting sexual assault victim kits and had been trained on how to properly collect such kits. She further had experience in training other nurses in the collection process. We therefore conclude that the trial court did not abuse its discretion in determining that Ms. Malcolm had "enough expertise to be in a better position than the trier of fact" to testify generally to the sexual assault victim kit collection process. *Id.*

### B. Medical Records

¶ 54        Defendant next argues that the trial court erred by admitting A.H.'s medical records into evidence because the medical records contained hearsay, and were not admissible under an exception to the hearsay rule, namely, the business records exception.

¶ 55        In that Defendant objected to the admission of the medical records on these grounds at trial, we review the trial court's determination regarding the records' admissibility de novo. *State v. Hicks*, 243 N.C. App. 628, 638, 777 S.E.2d 341, 348 (2015), *disc. review denied*, 368 N.C. 686, 781 S.E.2d 606 (2016). We conclude that the trial court did not err.

¶ 56        Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c). Generally, "[h]earsay is not admissible except as provided by statute" or by the Rules. *Id.* § 8C-1, Rule 802. The Rules provide that certain statements may be admitted under exceptions to the hearsay rule, including records of regularly conducted business activity:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if (i) kept in the course of a regularly conducted business activity and (ii) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all

as shown by the testimony of the custodian or other
qualified witness . . . unless the source of information or
the method or circumstances of preparation indicate lack
of trustworthiness . . . The term "business" as used in this
paragraph includes business, institution, association,
profession, occupation, and calling of every kind, whether
or not conducted for profit.

*Id.* § 8C-1, Rule 803(6).

¶ 57 In the instant case, Defendant contends that the medical records at issue were not properly authenticated business records admissible under Rule 803(6) because the testifying witness, Ms. Malcolm, was not "the custodian [of the records] or other qualified witness." *Id.* We disagree.

¶ 58 Hospital records may be admitted as business records under Rule 803(6) if properly authenticated by a custodian or qualified witness, *State v. Miller*, 80 N.C. App. 425, 428, 342 S.E.2d 553, 555, *appeal dismissed and disc. review denied*, 317 N.C. 711, 347 S.E.2d 448 (1986), unless the records bear indicia of a lack of trustworthiness, N.C. Gen. Stat. § 8C-1, Rule 803(6). However, "[t]here is no requirement that the records be authenticated by the person who *made* them." *State v. Romano*, 268 N.C. App. 440, 451, 836 S.E.2d 760, 770–71 (2019) (emphasis added) (citation omitted). Indeed, the statutory phrase "other qualified witness" "has been construed to mean a witness who is familiar with the business entries and the system under which they are made." *Miller*, 80 N.C. App. at 429, 342 S.E.2d at 556. "Trustworthiness is the foundation of the business records exception." *Id.*

¶ 59        In *State v. Tyler*, the defendant argued that a nurse's testimony regarding the victim's cause of death was inadmissible because her testimony was based in part on the victim's medical records. 346 N.C. 187, 204, 485 S.E.2d 599, 608, *cert. denied*, 522 U.S. 1001, 139 L. Ed. 2d 411 (1997). In considering the business-records exception to the rule against hearsay, our Supreme Court explained:

> The hospital librarian or custodian of the record or other qualified witness must testify to the identity and authenticity of the record and the mode of its preparation, and show that the entries were made at or near to the time of the act, condition or event recorded, that they were made by persons having knowledge of the data set forth, and that they were made *ante litem motam*. The court should exclude from jury consideration matters in the record which are immaterial and irrelevant to the inquiry, and entries which amount to hearsay on hearsay.

*Id.* (citation omitted).

¶ 60        The Supreme Court noted that the nurse worked "in the burn-trauma unit . . . [and] was familiar with [the victim]'s medical records, that the records were made during [the victim]'s stay at [the h]ospital . . . [and] kept contemporaneously with [the victim]'s care, and that the records were kept by the hospital in the regular course of the hospital's business." *Id.* at 205, 485 S.E.2d at 609. Accordingly, the hospital records, and therefore the nurse's testimony based thereon, were admissible under Rule 803(6). *Id.*

¶ 61        Similarly, in the case at bar, Ms. Malcolm testified that she was a staff nurse

in the emergency department of WakeMed during A.H.'s care. She further testified
that she was familiar with WakeMed's medical recordkeeping procedures at the
relevant time; that she was familiar with A.H.'s medical records; that she provided
care to A.H. during a portion of her stay at WakeMed; and that A.H.'s medical records
were created and maintained contemporaneously with her care. "The facts here raise
no suspicion of untrustworthiness. Hospital protocol was strictly adhered to." *Miller*,
80 N.C. App. at 429, 342 S.E.2d at 556. Thus, we conclude that this testimony was
sufficient to authenticate A.H.'s medical records.

¶ 62        Notably, the trial court ordered that any statements within the records that
might be construed as legal conclusions bearing on the issues at hand—such as a note
that A.H. had been "robbed and raped" —be redacted prior to publication to the jury.
Because "[t]rustworthiness is the foundation of the business records exception[,]" *id.*,
and because Defendant does not argue that the records were in any way
untrustworthy or had been altered from their original form, we conclude that the trial
court properly performed its gatekeeping function by "exclud[ing] from jury
consideration matters in the record which are immaterial and irrelevant to the
inquiry." *Tyler*, 346 N.C. at 204, 485 S.E.2d at 608.

### C. Hearsay Statements of A.H.

¶ 63        Defendant further argues that the trial court committed plain error by
admitting the testimony of Linda Carter, Jeanette Harris, and Harry Carter as to

certain out-of-court statements made by A.H. after her attack. We disagree.

### 1. Standard of Review

¶ 64    "Because our courts operate using the adversarial model, we treat preserved and unpreserved error differently." *State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012). Where, as here, "a criminal defendant has not objected to the admission of evidence at trial, the proper standard of review is a plain error analysis[.]" *State v. Gary*, 348 N.C. 510, 518, 501 S.E.2d 57, 63 (1998).

> The plain error rule is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*Lawrence*, 365 N.C. at 516–17, 723 S.E.2d at 333 (citation and internal quotation marks omitted).

### 2. Merits

¶ 65    Defendant contends that the trial court committed plain error by admitting testimony regarding several statements made by A.H., who died prior to trial. This argument lacks merit.

¶ 66      To begin, Defendant argues that Linda's testimony of A.H.'s statements after the attack constituted hearsay sufficiently prejudicial to amount to plain error. Defendant points to Linda's testimony that A.H.'s ring, cash, food stamps, Medicaid card, and driver's license were missing after the attack. As a preliminary matter, we disagree that the challenged testimony was hearsay. To the contrary, Linda testified regarding her own perception of what was missing from A.H.'s home when Linda arrived there shortly after the rape and robbery:

> [LINDA]: . . . She had her mother's ring with her five children's birth stones in there. And that was laying there on top of the dresser in a little container that she kept it in. And she only wore it on Sundays or times that she got dressed up. And that was gone. I mean, she had worn it the Sunday before. But that was gone.
>
> . . . [H]er pocketbook that she used all the time was -- he did get that, and [M]omma and I had gone to the bank on Friday afternoon to get money out of the bank because we had to replenish her five dollar stash.
>
> And what that means, is that she had a long list of people that she sent birthday cards to, and she always put a five dollar bill in there, so we kept a little five dollar stash in with her birthday cards. So we got money out of the bank on Friday afternoon and run a few errands and so all of that money was in the pocketbook, and that was gone, along with her food stamps and her Medicaid card and drivers license, some of those things, were gone out of her purse.

¶ 67      This testimony does not recount an out-of-court statement made by A.H. Instead, Linda testified regarding her own personal actions—accompanying A.H. to

the bank to withdraw cash—and perceptions—namely, observing that certain of her mother's possessions were conspicuously missing from her dresser and pocketbook. This testimony does not violate Rule 802's prohibition against hearsay.

¶ 68    Defendant further argues that certain testimony by Jeanette constituted hearsay sufficiently prejudicial to amount to plain error. Jeanette was present during Det. Sgt. Jackson's interview of A.H., and she testified with the assistance of notes she took during the interview. She testified that her mother said that the perpetrator entered her home, demanded money, removed her jewelry, penetrated her, and took approximately $450 from her billfold. This testimony does not amount to hearsay constituting plain error.

¶ 69    Defendant concedes that A.H.'s statements to Det. Sgt. Jackson are admissible. Therefore, Defendant cannot show that Jeanette's testimony—recounting her recollection of A.H.'s statements to Det. Sgt. Jackson—prejudiced Defendant because many of the same statements were admitted and heard by the jury during Det. Sgt. Jackson's testimony. Det. Sgt. Jackson testified that A.H. told him during the interview that the perpetrator demanded money and jewelry, had sex with her, and began going through her drawers. Even assuming that it was error to admit Jeanette's similar testimony, Defendant cannot meet the high bar to establish that the jury probably would have returned a different verdict absent the challenged testimony because several witnesses corroborated this testimony, including Det. Sgt.

Jackson. *See Gary*, 348 N.C. at 518, 501 S.E.2d at 63.

¶ 70 Defendant also contends that the following testimony from Linda constituted hearsay that amounts to plain error:

> [LINDA]: . . . [W]hen we got inside the storm door, I said, "Momma, what's going on?" And she was -- she was extremely terrified. It was in her eyes. And I said, "Are you okay?" And she said, "I'm okay." And she -- her eyes were just so fearful. And she was shaking like a leaf. And she was so white. And I knew she was crying, but she didn't have tears because she has macular degeneration, and that takes the moisture out. But you could tell by her face that she was just crying. So her heart was just crying.

Specifically, Defendant contends that Linda's testimony that A.H. said that she was "okay" but that Linda "could tell by her face that . . . her heart was just crying" was inadmissible hearsay, and that the admission of this testimony amounts to plain error because the State relied on this testimony to prove A.H.'s mental injury. This argument lacks merit.

¶ 71 First, A.H.'s statement that she was "okay" was not offered to prove the truth of the matter asserted, and thus was not hearsay. *See* N.C. Gen. Stat. § 8C-1, Rule 801(c). That is, the State did not offer that statement to establish that A.H. was "okay" after the rape; indeed, the State sought to establish the very opposite—that she suffered serious personal injury, both bodily and mental, after she was raped. *See id.* § 14-27.2(a)(2). Similarly, Linda's testimony that she "could tell by [A.H.'s] face that . . . her heart was just crying" was not hearsay because it was not testimony of

an out-of-court statement. *See id.* § 8C-1, Rule 801(c). Rather, as with her testimony concerning her observations of the state of her mother's home immediately after the incident, here, Linda permissibly testified regarding her own personal perception of A.H.'s mental state when she and Harry first arrived at A.H.'s house.

¶ 72        Defendant also argues generally that the trial court erred in admitting Harry's testimony as to statements made by A.H. after the rape and robbery. However, Defendant fails to identify any specific hearsay statements that he alleges were erroneously admitted. Because "it is not the role of the appellate courts to create an appeal for an appellant[,]" we will not attempt to divine which statements Defendant believes that the trial court erred in admitting. *State v. Williams*, 218 N.C. App. 450, 452, 725 S.E.2d 7, 9 (2012) (citation and internal quotation marks omitted).

### III.    Sentencing

¶ 73        Defendant next contends that the trial court erred by sentencing Defendant for both first-degree rape and the remaining first-degree kidnapping charge because the State used the first-degree rape conviction to elevate the kidnapping charge to first-degree kidnapping. The trial court entered judgment on the first-degree rape conviction and both first-degree kidnapping convictions, sentencing Defendant to a minimum of 240 and a maximum of 297 months of imprisonment on those charges, to run consecutively with his sentence on the remaining charges. The State contends that, because the trial court consolidated Defendant's sentences, this error is merely

clerical in nature.

¶ 74        As explained above, Defendant's first-degree kidnapping conviction on Count III must be reversed, and the judgment in 17 CRS 4 remanded for resentencing on the remaining first-degree kidnapping and first-degree rape convictions. As explained below, on remand, the trial court may not sentence Defendant for both first-degree kidnapping and the underlying first-degree rape.

¶ 75        Kidnapping is elevated from the second degree to the first when "the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted[.]" N.C. Gen. Stat. § 14-39(b) (2007). A criminal "defendant may not be punished for both the first-degree kidnapping and the underlying sexual assault." *State v. Daniels*, 189 N.C. App. 705, 709, 659 S.E.2d 22, 25 (2008). Where the State uses the commission of a sexual assault or rape "to elevate [a] kidnapping to first-degree kidnapping[,] . . . the trial judge err[s] in sentencing [a] defendant for both crimes." *Id.* at 710, 659 S.E.2d at 25. This is so because N.C. Gen. Stat. § 14-39, defining first-degree kidnapping, reflects the General Assembly's intent that "a defendant could not be convicted of both first degree kidnapping and a sexual assault that raised the kidnapping to first degree." *State v. Freeland*, 316 N.C. 13, 23, 340 S.E.2d 35, 40–41 (1986).

¶ 76        Here, like in *Daniels*, the jury found Defendant guilty of first-degree kidnapping but did not specify upon which theory it relied in reaching its verdict—

whether it found that A.H. was not released by Defendant in a safe place, that she was seriously injured, or that she was sexually assaulted. 189 N.C. App. at 710, 659 S.E.2d at 25. As such, "we are required to assume that the jury relied on [D]efendant's commission of the sexual assault in finding him guilty of first-degree kidnapping." *Id.*

Therefore, upon Defendant's resentencing, "the trial court may 1) arrest judgment on the first-degree kidnapping conviction and resentence [D]efendant for second-degree kidnapping, or 2) arrest judgment on the first-degree rape conviction and resentence [D]efendant on the first-degree kidnapping conviction." *Id.* at 710, 659 S.E.2d at 25; *see also Freeland*, 316 N.C. at 24, 340 S.E.2d at 41.

### IV. Civil Judgment for Attorney's Fees

Defendant also appeals, by petition for writ of certiorari, from the trial court's imposition of a civil judgment against him for fees awarded to his court-appointed attorney without first giving him notice and an opportunity to be heard. As explained below, we allow Defendant's petition for writ of certiorari in order to reach the merits of this portion of his appeal, vacate the judgment, and remand for a new hearing on the issue of attorney's fees.

### A. Jurisdiction

As a preliminary matter, Defendant concedes that his counsel failed to file proper written notice of appeal of the civil money judgment entered against Defendant as required by Rule 3 of our Rules of Appellate Procedure, governing

appeal from civil judgments. N.C.R. App. P. 3(a). Accordingly, Defendant petitioned this Court to issue its writ of certiorari in order to review the civil judgment against him for attorney's fees. Because we conclude that the issue raised by Defendant is meritorious, we exercise our discretion to issue a writ of certiorari to review this issue. *See State v. Friend*, 257 N.C. App. 516, 519, 809 S.E.2d 902, 905 (2018).

## B. Merits

¶ 80        This Court in *Friend* explained the process that trial courts must follow before imposing a money judgment against defendants for their court-appointed counsel:

> In certain circumstances, trial courts may enter civil judgments against convicted indigent defendants for the attorneys' fees incurred by their court-appointed counsel. By statute, counsel's fees are calculated using rules adopted by the Office of Indigent Defense Services, but trial courts awarding counsel fees must take into account factors such as the nature of the case, the time, effort, and responsibility involved, and the fee usually charged in similar cases. Before imposing a judgment for these attorneys' fees, the trial court must afford the defendant notice and an opportunity to be heard.

*Id.* at 522, 809 S.E.2d at 906 (citations and internal quotation marks omitted). Trial courts must ask defendants directly, not through their assigned counsel, whether they wish to be heard on the issue of attorney's fees. *Id.* at 523, 809 S.E.2d at 907. Where the trial court fails to comply with this directive, we must vacate the civil judgment imposing attorney's fees and remand for a new hearing on the issue. *Id.*

¶ 81        The trial court's entire colloquy with Defendant in the instant case proceeded

as follows:

> [DEFENSE COUNSEL]: Your Honor, . . . I don't have an idea how many hours I have in this. I will submit that to the Court and ask for judgment to be made. I think he has to be asked if he was satisfied with the work that I did for him.
>
> THE COURT: Mr. Elder, your attorney is indicating that she [ha]s not tabulated all of her hours as it relates to your representation. You did indicate earlier that you were satisfied with her services. Sir, with respect to this case, I believe should the Court of Appeals uphold the Court's sentencing and the convictions of the jury, you w[ill] be 82 years old. So the Court is not going to impose attorneys fees. The Court will docket those attorney fees and costs of court as a civil judgment against you, sir, should you be released from custody at age 82.
>
> Is there anything else further?
>
> [DEFENSE COUNSEL]: No, Your Honor, thank you.
>
> THE COURT: We are adjourned.

Defense counsel then submitted a fee application dated 7 April 2019, four days after Defendant's sentencing hearing. Also on 7 April, the trial court entered a civil judgment against Defendant imposing attorney's fees in the amount of $17,212.50.

¶ 82    The State argues that because the record is silent as to whether Defendant had notice and an opportunity to be heard between his sentencing hearing and the entry of the civil judgment, we should "not presume error from [the] . . . record." *State v. Bond*, 345 N.C. 1, 26, 478 S.E.2d 163, 176 (1996), *reh'g denied*, 345 N.C. 355, 479 S.E.2d 210, *cert. denied*, 521 U.S. 1124, 138 L. Ed. 2d 1022 (1997). We disagree that

the record here is "silent."

¶ 83        The matter at hand is indistinguishable from that presented in *State v. Harris*, 255 N.C. App. 653, 805 S.E.2d 729 (2017), *disc. review denied*, 370 N.C. 579, 809 S.E.2d 872 (2018). In that case, "the trial court simply stated that [the d]efendant was to be taxed, with the costs of court and attorney fees, if applicable, if [the d]efendant's counsel was court appointed." *Harris*, 255 N.C. App. at 664, 805 S.E.2d at 737 (internal quotation marks omitted). However, because the defendant's counsel did not know, at the time of the hearing, the number of hours that he had worked, the trial court later entered a civil judgment upon the attorney's submission of a fee application. *Id.* at 657, 805 S.E.2d at 732–33. Our Court concluded that "[b]ecause there [wa]s no indication in the record that [the d]efendant was notified of and given an opportunity to be heard regarding the appointed attorney's total hours or the total amount of fees imposed, the imposition of attorney's fees must be vacated." *Id.* at 664, 805 S.E.2d at 737 (citation and internal quotation marks omitted).

¶ 84        The same is true here. Defendant could not have received a meaningful opportunity to be heard between his sentencing hearing and the imposition of the money judgment because his counsel had not yet submitted the fee application. The trial court entered the civil money judgment against Defendant on the same day that his counsel submitted the fee application, four days after Defendant's sentencing hearing. We therefore conclude that the trial court erred by failing to provide

Defendant with notice and an opportunity to be heard regarding the amount of attorney's fees to be assessed against him. Accordingly, we must vacate the civil judgment against Defendant and remand for a new hearing on this issue. "On remand, the State may apply for a judgment in accordance with N.C. Gen. Stat. § 7A-455, provided that Defendant is given notice and an opportunity to be heard regarding the total amount of hours and fees claimed by the court-appointed attorney." *Id.* (citation omitted).

### *Conclusion*

¶ 85        We conclude that the trial court erred in denying Defendant's motion to dismiss Count III, first-degree kidnapping, reverse that conviction, and remand the judgment in 17 CRS 4 for resentencing. We also conclude that the trial court erred in sentencing Defendant for both first-degree kidnapping and first-degree rape. On remand, the trial court may either "1) arrest judgment on the first-degree kidnapping conviction and resentence [D]efendant for second-degree kidnapping, or 2) arrest judgment on the first-degree rape conviction and resentence [D]efendant on the first-degree kidnapping conviction." *Daniels*, 189 N.C. App. at 710, 659 S.E.2d at 25. We also vacate the civil judgment imposing attorney's fees and remand for a new hearing, during which Defendant shall be afforded the requisite notice and opportunity to be heard. Otherwise, Defendant received a fair trial, free from prejudicial error.

NO ERROR IN PART; REVERSED IN PART AND REMANDED FOR RESENTENCING; CIVIL JUDGMENT VACATED AND REMANDED FOR REHEARING.

Chief Judge STROUD concurs.

Judge TYSON concurs in part and dissents in part by separate opinion.

TYSON, Judge, concurring in part and dissenting in part.

The majority opinion's analysis and conclusions to allow Defendant's motion to dismiss and disregard the jury's verdict of one count of first-degree kidnapping and to remand for re-sentencing on both the first-degree rape conviction and the first-degree kidnapping convictions are error. Defendant also failed to preserve or to carry his burden on appeal to show reversible error occurred in the imposition of a civil judgment for attorney's fees. I respectfully dissent in part.

Except for these errors, the majority opinion's analysis and conclusions of the Defendant's claims regarding his motion to dismiss the charges of first-degree rape and common law robbery, the admittance of a nurse as an expert witness and hearsay are proper. I fully concur with the remaining portions of the majority's opinion concluding no error.

## I. Defendant's Conviction of First-Degree Kidnapping was Proper

Defendant asserts he had purportedly completed the offense of first-degree rape, prior to moving A.H. from one bedroom to another, and he could not have moved or restricted A.H. "for the purpose of facilitating the commission of" first-degree rape. Binding precedent from our Supreme Court negates this argument.

The occurrence of all essential elements of a crime does not mean the commission of a crime ceases. *State v. Hall*, 305 N.C. 77, 82-83, 286 S.E.2d 552, 556 (1982), *overruled on other grounds by State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488

(1986). The indictment in *Hall* charged the defendant with asportation and kidnapping of the victim to facilitate armed robbery. *Id.* at 82, 286 S.E.2d at 555. The armed robbery in question had occurred before the kidnapping. *Id.* The defendant argued the armed robbery had occurred prior to the kidnapping and the kidnapping could not be in furtherance of the armed robbery. *Id.*

¶ 90        Our Supreme Court refused to establish hard distinctions between the purposes listed in N.C. Gen. Stat. § 14-39(a) (1981) and held "[t]hat the crime was 'complete' does not mean it was completed." *Id.* at 83, 286 S.E.2d at 556 (citation omitted). This reasoning has been sustained by both our Supreme Court and this Court. *See State v. Kyle*, 333 N.C. 687, 695, 430 S.E.2d 412, 416 (1993), *disapproved of on other grounds by State v. Golden*, 143 N.C. App. 426, 546 S.E.2d 163 (2001); *see also State v. Holloway*, 253 N.C. App. 658, 799 S.E.2d 466, 2017 WL 2118712 (2017) (unpublished).

¶ 91        Defendant's argument before us is the same our Supreme Court denied in *Hall*. *Hall*, 305 N.C. at 82, 286 S.E.2d at 555. After raping A.H., Defendant took her to another room where he tied her to a chair and blocked the door with a bed. This further restraint is clearly "separate and apart from, and not an inherent incident" of the underlying rape. *State v. Fulcher*, 294 N.C. 503, 524, 243 S.E.2d 338, 352 (1978).

¶ 92        This second restraint prevented A.H. from seeking medical attention, contacting help, or fleeing from Defendant. Defendant's actions continued A.H.'s

pain, damage, and trauma from the rape. These restraints also allowed Defendant a chance to shower, instead of needing to immediately flee. These additional restraints and asportation "ma[de] easier" the commission of the rape by allowing Defendant a chance to destroy evidence. *See Kyle*, 333 N.C. at 694, 430 S.E.2d at 415-16.

¶ 93 Reviewed in the light most favorable to the State, and allowing the benefit of all inferences therefrom, the evidence supports the conclusion that a purpose of the separate kidnapping was to facilitate the rape and the jury could conclude that the kidnapping was part of an ongoing criminal transaction. *State v. Chevallier*, 264 N.C. App. 204, 211, 824 S.E.2d 440, 446 (2019) (citation omitted).

¶ 94 Defendant committed a separate asportation by restraining and moving the victim to a new room against her will in furtherance of the rape. The fact all necessary elements of the underlying rape may have been "complete" does not warrant this Court overturning the jury's determination, concluding Defendant's second kidnapping furthered the rape. *See Hall* 305 N.C. at 83, 286 S.E.2d at 556. Defendant's claim is without merit and is properly overruled.

## II. Defendant was Properly Sentenced at Trial

¶ 95 Defendant argues, and the majority's opinion holds, that a defendant "may not be punished for both the first-degree kidnapping and the underlying sexual assault." *State v. Daniels*, 189 N.C. App. 705, 709, 659 S.E.2d 22, 25 (2008).

¶ 96 Defendant relies upon *State v. Freeland*, 316 N.C. 13, 340 S.E.2d 35 (1986) and

*Daniels* to argue that he was improperly sentenced. In both cases, Courts held the defendants could not be sentenced for both first-degree kidnapping and rape when the rape was the basis for raising the kidnapping from second to first degree. *Freeland*, 316 N.C. at 20, 340 S.E.2d at 39; *Daniels*, 189 N.C. App. at 709, 659 S.E.2d at 25; *see also Fulcher*, 294 N.C. at 525, 243 S.E.2d 352-53.

¶ 97        The Supreme Court of North Carolina and our Court noted the jury was erroneously instructed that it could rely upon a separately charged rape to raise the kidnapping to the first-degree. *Freeland*, 316 N.C. at 21, 340 S.E.2d at 39; *Daniels*, 189 N.C. App. at 709-10, 659 S.E.2d at 25. In doing so, the defendants were "unconstitutionally subjected to double punishment under statutes proscribing the same conduct." *Freeland*, 316 N.C. at 21, 340 S.E.2d at 39.

¶ 98        Defendant points to the written judgments as proof that Defendant's sentence for first-degree kidnapping relied upon his conviction for first-degree rape.

¶ 99        While a conviction of first-degree kidnapping predicated on a separately charged rape is a violation of double jeopardy, Defendant's first-degree kidnapping charges were not predicated upon his rape charge. The trial court instructed the jury they could find first-degree kidnapping if the victim "was not released in a safe place or was seriously injured" as provided in the statute. *See* N.C. Gen. Stat. § 14-39(b) (2007). Unlike the cases cited by Defendant, the trial court never instructed the jury that the first-degree kidnapping charges could be predicated upon the separately

charged rape. Defendant's right to be free from double jeopardy was never violated and he was not convicted twice for the same conduct or offense. The jury's instruction, Defendant's conviction, and trial court's sentencing by the trial court were proper.

¶ 100 Because Defendant's first-degree kidnapping conviction did not rely upon the rape charge, there is no error in the jury considering and convicting Defendant of the two separate charges. Any asserted error is clerical error and is not prejudicial.

### III. Defendant Failed to Properly Appeal the Attorney's Fees

¶ 101 Defendant admits he failed to file a written notice of appeal of the civil money judgment entered against Defendant as required by Rule 3 of the Rules of Appellate Procedure. N.C. R. App. P. 3(a). "The rules governing appeals are mandatory and not directory." *Womble v. Gin Co.*, 194 N.C. 577, 579, 140 S.E. 230, 231 (1927) (citation omitted). Defendant petitioned this Court for a writ of certiorari. This Court, in its discretion, may allow such writs if the petition "show[s] merit or that [prejudicial] error was probably committed." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (citation omitted).

¶ 102 This Court presumes "in favor of the regularity and validity of judgments in the lower court, and the burden is upon appellant to show prejudicial error." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 192 N.C. App. 114, 118, 665 S.E.2d 493, 497 (2008) (citation omitted).

¶ 103 Defendant's petition does not show merit nor prejudicial error. Defendant

argues that he must be asked personally whether he wishes to be heard upon the issue of attorney's fees before they can be entered as a judgment against him. *State v. Friend*, 257 N.C. App. 516, 523, 809 S.E.2d 902, 907 (2018). In *Friend,* this Court held that if there was "evidence in the record demonstrating that the defendant received notice, was aware of the opportunity to be heard on the issue, and chose not to be heard" then the conditions of notice and opportunity prior to imposition of a civil attorney fee judgment are satisfied. *Id.*

¶ 104      Here, the trial court explicitly notified Defendant in open court "attorney fees and costs of court [will be docketed] as a civil judgment against you. . . ." Defendant's attorney also stated, with Defendant present, "[Defendant] has to be asked if he was satisfied with the work that I did for him." Having learned of this right, there is no indication that Defendant attempted to assert it or challenge the fees.

¶ 105      On appeal, Defendant does not contest the amount imposed, merely the method used. Defendant was afforded sufficient notice and opportunity to be heard on the matter in open court. He failed to argue or show that his claim has merit or he suffered prejudicial error. Following prior precedent, Defendant's petition for a writ of certiorari is properly dismissed. *Grundler*, 251 N.C. at 189, 111 S.E.2d at 9.

## IV.      Conclusion

¶ 106      The majority opinion's analysis of Defendant's claims regarding his motion to dismiss the charges of first-degree rape and common law robbery, the admittance of

a nurse as an expert witness, and hearsay is proper. I fully concur with those findings and conclusions of no error.

¶ 107       Defendant's claims regarding (1) his motion to dismiss a first-degree kidnapping charge, (2) sentencing on first-degree rape and both first-degree kidnapping charges, and (3) the imposition of attorney's fees as a civil judgment were either not appealed or have no legal basis and all are properly denied or dismissed.

¶ 108       Defendant received a fair trial, free from prejudicial errors he preserved and argued. There is no error in the jury's verdicts or in the judgments entered thereon. I concur in part and respectfully dissent in part.